JOHN J. WANGANSTEIN and Another v. AMOS B. JONES and Others.[1]

June 6, 1895.

Nos. 9280—(174).

**Mechanic's Lien—Conveyance of Premises—Evidence.**
Evidence considered, and *held* sufficient to sustain the judgment.

Appeal by defendant Thomas D. Merrill from a judgment of the district court for St. Louis county, entered in pursuance of an order for judgment by Lewis, J.    Affirmed.

*Wm. C. White*, for appellant.
*John Rustgard*, for respondents.

BUCK, J.    Action to enforce a mechanic's lien.    On April 7, 1892, the plaintiffs, who were architects, were employed by the defendant Amos B. Jones to furnish plans and specifications for, and to superintend the erection of, a certain dwelling house which Jones

[1]Reported in 63 N. W. 717.

was about to erect upon certain lots then owned by him in the city of Duluth; and, on the day above named, plaintiffs entered upon the performance of their contract. In addition to furnishing plans and specifications, it was the duty of the plaintiffs to visit the building and inspect the work from time to time, and estimate the amount done, and approve of the work, before any money was paid upon it. A part of the services to be performed by plaintiff was the superintending of the erection of a first-class hot-water heating apparatus in such dwelling; and, from the contract appearing in evidence, the work to be done was quite elaborate and expensive, and needed the careful examination of a competent person, to see that it was well done. The building itself cost over $11,000. The contractors for putting in the heating apparatus commenced work in the month of August, 1892, and completed the work October 4, 1893.

About May 1, 1893, the defendant Amos B. Jones conveyed the premises to the defendant Thomas D. Merrill, who resists the claim of the plaintiffs' lien upon the premises upon the ground that plaintiffs, as such architects, had accepted the house as completed in the fall of 1892, and that whatever they did in September and October, 1893, was under an entirely different contract, and in no way connected with the architects' house contract made April 7, 1892. If the facts sustained this contention the claim of Merrill would be a valid defense, because a separate contract cannot be tacked to another to secure a mechanic's lien for services or labor done under both, or either one separately, so as to extend the time for filing the lien under the first contract, where such time had already expired.

The evidence bearing upon this question is rather unsatisfactory, but the court below found, upon the whole evidence, against the contention of the defendant Merrill. It does appear quite satisfactorily, however, that Merrill bought the house with the distinct understanding with Jones that the heating plant should be perfected. Jones was to perfect this heating plant under the superintendence of the plaintiffs, as architects, under the contract of April 7, 1892; and the long delay in perfecting it was caused by the contractors putting in a defective plant in the first instance, and this was done through no fault of the plaintiffs. In fact, it was their watchfulness and care that resulted in Merrill's finally obtaining a satisfactory heating apparatus, and to this end these plaintiffs rendered

services, as such architects, as late as the month of September, and on October 4, 1893.

Even Mr. Merrill himself, in the month of September, 1893, requested plaintiffs to go and thoroughly inspect the heating plant, which they did, he then having lived in the house for several months, and knowing of the condition of the heating plant.   It nowhere appears that he offered to pay for these services of the plaintiffs rendered in inspecting and accepting the plant after he requested them to do so, or that he admits any liability upon his part to pay for such services, which were valuable, and imposed great responsibilities upon them.   Certainly, the court below had a right to infer that Merrill regarded these plaintiffs as still engaged in the care and supervision of this heating plant until its final completion and acceptance, especially as he had made agreement with Jones at the time of the purchase that he should perfect it.   By language and conduct Merrill adopted the contract made by Jones with plaintiffs in respect to the services they were to render in regard to this heating plant.

This heating plant was, including radiators, a part of the house. See Capehart v. Foster, supra, p. 132, 63 N. W. 257.   A change of ownership does not break the lien, so that the lien can only commence after the change, and upon a new contract.   No matter how many changes there may be in the ownership after the building is commenced under a contract to build and complete it, the lien commences with the work, and if the work continues the lien continues, unaffected by the change of ownership.   And the last item of work will relate back to the period when the work was commenced.

In order that the lien should not exist for an indefinite period, the legislature has fixed a time within which such lien claim must be filed and enforced, or else cease.   This affords protection against a subsequent purchaser, and where such purchaser—that is, one who purchases after the mechanic's work commences and his lien attaches—does so with a knowledge of the contract and its contents, and that the work is to be completed during a period of time long subsequent to the purchase, and he directly or impliedly permits its continuance, he is estopped from denying the existence of the lien.

The judgment of the court below is therefore affirmed.