WETZEL & T. RY. CO. v. TENNIS BROS. CO.

(Circuit Court of Appeals, Fourth Circuit. May 1, 1906.)

No. 638.

1. CORPORATIONS—WORKMEN'S LIENS—RIGHT OF CORPORATION TO LIEN—STATE STATUTE—CONSTRUCTION.

Under W. Va. Code 1899, c. 75, § 7, providing that every workman, laborer, or "other person," who shall do or perform any work or labor by virtue of any contract for any incorporated company doing business within the state shall have a lien therefor on the real estate and personal property of the company, and chapter 13, § 17, subd. 9, declaring that the word "person" includes corporations, if not restricted by the context, a corporation employed to supervise the construction of an electric railway by means of the personal services of its officers and servants is entitled to a lien therefor.

2. SAME—AMOUNT OF COMPENSATION.

That a contract employing a corporation to superintend the construction of an electric railway provided that the compensation should be measured by a percentage on the actual net cost of all materials and labor necessary for the construction of the railway, instead of a specific sum, did not affect the corporation's right to a lien for the amount due which was susceptible of definite ascertainment by calculation.

3. SAME—FOREIGN CORPORATIONS—NONCOMPLIANCE WITH STATE LAW—RIGHT TO SUE.

Under W. Va. Code 1899, c. 54, § 30, as amended by Acts 1901, p. 108, c. 35, § 31, providing that a foreign corporation not having complied with the laws of the state shall not be entitled to maintain any action in the courts of the state, and that the failure of a foreign corporation plaintiff to so qualify may be pleaded in abatement in any action, suit, or proceeding, such failure, so far as the federal courts are concerned, does not affect the jurisdiction of the court in which the suit is pending nor the validity of a contract sued on, but is a matter which the defendant is entitled to raise or waive at its election.

4. APPEARANCE—PLEADING—FILING DEMURRER.

In the federal courts, the filing of a demurrer amounts to a general appearance.

5. PLEA—ABATEMENT AND REVIVAL—CAPACITY TO SUE—ABATEMENT—TIME.

Where, in an action by a foreign corporation, defendant demurred and after the demurrer was overruled, filed an answer to which replication was had after which defendant filed a cross-bill, and after a demurrer to this was overruled plaintiff answered the cross-bill and a replication was filed to this on which issue was joined and a trial had on the merits, it was then too late for defendant to plead in abatement plaintiff's alleged disability to sue because it had not complied with the laws of the state.

6. CORPORATIONS—WORKMEN'S LIENS—RIGHT TO LIEN—PAYMENT IN BONDS.

Where an option contained in a railroad construction contract by which plaintiff was entitled to take one-half of the amount due it thereunder in bonds of the railroad company at a reduced rate instead of money was not availed of, but instead of tendering the bonds defendant canceled the contract, prevented plaintiff from further performing the same, and denied all liability thereunder, such option did not deprive plaintiff of the right to a lien given by a state statute for the amount due under the contract.

7. SAME—PRIORITY—OBJECTIONS—ESTOPPEL.

Where defendant railroad company had broken a construction contract sued on, and was itself in the hands of a receiver, it was estopped from itself objecting to the amount found due the contractor, and to the order of priority of the lien awarded to it.

8. RAILROADS—CONSTRUCTION CONTRACT—BREACH—LIEN—SALE OF PROPERTY.

Where a railroad contractor was entitled to a lien on the road on the railroad's breach of a construction contract and the appointment of a receiver of the railroad's property, it was proper for the court on foreclosing such lien to decree a sale of the property to pay the indebtedness found to be due.

9. APPEAL—OBJECTIONS NOT RAISED AT TRIAL—OTHER ACTION PENDING.

In a suit to foreclose a lien on the property of a railroad company, an objection to an order of sale because of receivership proceedings pending in a federal court sitting in another state could not be raised for the first time on appeal.

Cross-Appeals from the Circuit Court of the United States for the Northern District of West Virginia, at Parkersburg.

For opinion below, see 140 Fed. 193.

George R. Wallace (V. B. Archer, on the brief), for Wetzel & T. Ry. Co.

H. P. Camden, for Tennis Bros. Co.

Before PRITCHARD, Circuit Judge, and WADDILL and Mc-DOWELL, District Judges.

WADDILL, District Judge. On the 23d day of September, 1903, the Tennis Bros. Company filed its bill in equity in the United States Circuit Court for the Northern District of West Virginia, against the Wetzel & Tyler Railway Company, to enforce its mechanic's lien for the amount of the agreed price of certain labor actually performed by the plaintiffs in behalf of the defendant in the construction of its railway pursuant to a contract theretofore entered into between them, and also for the recovery of damages for breach of contract in not permitting the plaintiff to wholly perform such contract. To this bill a demurrer was filed and overruled by the court; and thereupon the defendant railway company duly answered, denying generally the allegations of the bill, and particularly that there had been a modification made in the contract after its execution, relating to the supervision and construction of certain car barns, powerhouse, and supplies furnished therefor; and also that said plaintiffs had failed to keep the contract on its part; the defendants contention being that C. C. Tennis had not personally supervised the construction of the road as was contemplated; that the work done was negligently performed; that the track as completed was imperfect and defective, caused by the failure of the plaintiff to personally supervise the same as aforesaid; to employ competent men for the work, and to furnish sufficient and suitable implements and materials for the same. A general replication was duly filed to this answer, and issue joined thereon; and thereafter, on the 23d day of June, 1904, a cross-bill was filed by the railway company praying for affirmative relief against the plaintiff, the Tennis Bros. Company, and asking damages in the sum of $50,000, against it for its failure to properly perform the contract entered into by it in connection with the construction of said road, and on account of which the railway was forced into the hands of a receiver subsequent to the institution of this suit. To this cross-bill the Tennis Bros. Company demurred, which demurrer was overruled; and thereupon an answer was duly filed denying generally the averments of said bill. To such answer, a replication was made, and issue joined thereon, and, without reference to a master, a mass of evidence was taken by the parties respectively, and the cause submitted to the court for hearing on the merits; and a final decree was duly entered on the 23d day of August, 1905, from which both parties appealed.

The decision of the lower court was, in effect, that no recovery could be had upon the cross-bill, and the same was dismissed; that the plaintiff, the Tennis Bros. Company, were entitled to recover only for the amount of labor and work done under their contract of the 15th of April, 1903, up to the time of the cancellation thereof by the defendant, to wit, for the sum of $12,898.45, being principal and interest due as of the date of the decree; and that no recovery could be had

by it, either on account of its estimated profits, arising by reason of the failure of the defendant to allow it to perform the contract on its part, or because of the alleged work and labor done and supervision and construction of the car barns and power house, because of an alleged modified agreement; and said court further decreed that for the amount above specified, said Tennis Bros. Company was entitled to a lien upon the property of the defendant railway company, enforceable in this cause, and for which the defendant's property should be sold. In the view we take, it will not be necessary for this court to enter into a discussion of all of the various assignments of error made upon the appeal and cross-appeal by the parties respectively, further than to say that the same have been fully considered, and except as herein specifically referred to, are believed to be without merit.

At the threshold, we deem it proper to say that we fully concur in the action of the lower court in its ruling upon the four questions specifically passed upon by it, namely, in the dismissal of the cross-bill; the ascertainment that the plaintiff was only entitled to recover, under the circumstances of this case, for the actual work and labor done and performed under its contract, as distinguished from what it claimed on account of estimated profits; that nothing should be allowed it on account of its rights arising from the so-called "modified contract" respecting the construction of the car barns and power-house of the defendant company; and that the amount decreed the plaintiff was properly ascertained by the lower court. We shall likewise not attempt to give reasons in detail for these conclusions; or review the voluminous evidence contained in the record, but will content ourselves in this regard upon these four questions, by a reference to the able and convincing opinion of the learned judge of the court below, as containing our views thereon.

Coming to the right of the plaintiff to recover at all by reason of the contract, and the mechanic's lien claimed pursuant thereto, it is earnestly insisted that the plaintiff corporation is not entitled to the benefit of the mechanics' liens act of West Virginia; that it had no standing in court to maintain such a suit, if entitled to such relief, because of its failure properly to qualify itself as a corporation to do business under the laws of the state of West Virginia; that it had forfeited its right to a mechanic's lien by reason of the agreement to accept bonds in lieu of money, in part payment of the amount to become due; that it did not have the first lien upon the property of the defendant company; and in no event, should the lower court in this proceeding have decreed in its favor, because of the pendency of a suit in the federal court sitting in the state of Pennsylvania, and in which the property of the defendant company was being administered. These questions we will consider in the order named:

First. It is earnestly insisted that the Tennis Bros. Company is not entitled to a mechanic's lien, because it is a corporation; that only individuals are given such lien under the West Virginia statute; and that in no event can a lien be sustained for a claim arising under the contract of employment involved here, or for the character of service contemplated by the contract. The lien is claimed under sec-

tion 7 of chapter 75 of the Code of West·Virginia of 1899, which provides that:

"Every workman, laborer, or other person, who shall do or perform any work or labor, by virtue of any contract, for any incorporated company doing business in this state, shall have a lien for the value of such work upon all the real estate and personal property of said company, and such lien shall have priority over any lien created by deed or otherwise on such real estate, or personal property, subsequent to the time when the said labor was performed, but there shall be no priority of lien as between the parties claiming under the provisions of this section; provided, that no lien shall be created under this section for labor performed more than nine months before such lien was recorded."

The lien was duly claimed under the statute, and no contention is made on that account; but it is insisted that the same cannot be maintained for the reasons above stated. Can a corporation claim the benefit of this statute, and secure a lien thereunder? This depends upon the interpretation to be given to the language "or other person" in the act, and whether corporations are embraced therein for a claim otherwise entitled to the benefits of the act. The Code of West Virginia, 1899, § 17, c. 13, subd. 9, says:

"The word 'person' includes corporations, if not restricted by the context."

There is nothing in the context of the act under consideration, section 7, c. 75, Code, supra, that would either preclude a corporation from claiming the benefit of the act, or indicate that the words, "or other person" were used in any narrower or restricted sense. The word "person" used in the statute has not unfrequently been under review by the courts; and certainly so far as the states of Virginia and West Virginia are concerned, the use of such word "person" includes a corporation. This is undoubtedly the rule in civil proceedings. Quesenberry v. People's B. & L. Ass'n, 44 W. Va. 512, 30 S. E. 73; Railroad Co. v. Gallahue, 12 Grat. (Va.) 655, 663, 65 Am. Dec. 254; Miller v. Commonwealth, 27 Grat. (Va.) 110; Portsmouth Gas Co. v. Sanford, 97 Va. 125, 33 S. E. 516, 45 L. R. A. 246, 75 Am. St. Rep. 778. And in the courts of the states of New York, Georgia, Nebraska, and Utah, the word "person" used in the mechanic's lien acts of those states, has been specifically held to include corporations. Gaskell v. Beard, 58 Hun, 101, 11 N. Y. Supp. 399; Loudon Assur. v. Coleman, 59 Ga. 653; Chapman v. Brewer, 43 Neb. 890, 62 N. W. 320, 47 Am. St. Rep. 779; Doane v. Clinton, 2 Utah, 417. At common law, a corporation is deemed a "person" when the circumstances in which it is placed, are identical with those of a natural person, which, irrespective of the statute, and the construction placed thereon by the court, under the circumstances of this case, would include such a claim as the one sought to be enforced here. It is true that in this case, the claim is in behalf of a corporation; but it is for work of an individual character, as distinguished from corporate service; and it is quite clear that the real purpose and intent of the contract was to have the personal supervision and service of C. C. Tennis, and such of his corps of general engineering and office force, as was necessary to intelligently "supervise the construction for the party of the second

part, of its electric railway line," proposed to be constructed. Indeed, one of the defenses here is that the contract was broken because of the failure of said Tennis sufficiently to devote his personal service to the construction of the work; and there would seem to be no good reason why a corporation or person thus performing such "work or labor" should not be entitled to the benefit of the mechanic's lien law. To supervise the construction of a street car line, as well individually as by and through assistants, is to perform "work or labor"; and the person so rendering the same, is entitled to the benefits of the mechanic's lien law of West Virginia; and there is nothing in the contention that the plaintiff should be disentitled to the benefit of this lien because his compensation was measured by a percentage on the actual net cost of all materials and labor necessary for the construction of the electric railway, instead of a specific sum; the manner of arriving at the amount due being matter of calculation, and has no bearing upon the right to the same.

Counsel for the defendant referred to quite an array of authority bearing upon persons entitled to claim the benefit of the mechanic's lien laws, which the court has not failed to carefully note, including the case from West Virginia of Richardson v. Norfolk & Western Railroad Co., 37 W. Va. 641, 17 S. E. 195; the contention being that only employés of the corporation should be entitled to the benefit of such lien, as distinguished from persons having contractual relations therewith. These, however, will not affect this case; for here, the plaintiff, in the very language of the act, is a "person," who by virtue of a contract, performs work and labor for the defendant company; the work being of a character for which a right of lien existed. Architects, engineers, and others who superintend the erection and construction of buildings, have frequently been held entitled to the benefit of the mechanic's lien law; and we think it quite clear that a person doing similar work of a personal character on the construction of a railroad, is entitled to a like lien. Phœnix Co. v. Hotel Co. (C. C.) 66 Fed. 683; Couper v. Gaboury, 69 Fed. 7, 16 C. C. A. 112; Mulligan v. Mulligan, 18 La. Ann. 20; Wanganstein v. Jones, 61 Minn. 262, 63 N. W. 717; Stryker v. Cassidy, 76 N. Y. 50, 32 Am. Rep. 262; Willamette v. Remick, 1 Or. 169.

Second. The right of the plaintiff to maintain this suit is seriously controverted, because of its failure to qualify under the laws of the state of West Virginia, as a corporation to do business in that state. Code W. Va. § 30, c. 54, as amended by section 31, c. 35, p. 108, of the Acts of 1901. It is admitted that at the time of performing the work, taking out the mechanic's lien, and the institution of the suit, the corporation had not conformed to the law in this respect; and that prior to the determination of and entry of the final decree therein, it had so qualified. We are asked to pass upon the effect of this failure. In the view we take, it is not essential that we do so, so far as this suit, upon its pleadings, is concerned; though we think it is quite apparent that this omission on the part of the plaintiff does not operate to end a suit otherwise regularly instituted, or to destroy a right in other respects validly existing (Toledo Co. v.

Thomas, 33 W. Va. 556, 569, 570, 11 S. E. 37, 25 Am. St. Rep. 925), and that the greatest effect, so far as the federal courts are concerned, would be to suspend the prosecution of such suit until compliance was had with the statute. The right of the defendant to raise this question of the plaintiff's ability to sue, was a personal one. It did not relate to the jurisdiction of the court, in which the suit was pending; or to the validity of the contract sought to be enforced; but was a matter which the defendant could place in issue, or not, at its option; the express provision of the act being that the plaintiff's failure to so qualify itself "may be pleaded in abatement of any such action, suit or proceeding." If the defendant saw fit, as it did in this case, not to present the technical question affecting the plaintiff's right to sue, but go to trial on the merits, it had manifestly the right so to do. A demurrer was filed and overruled; an answer was filed; replication was had thereto; a cross-bill was filed, and a demurrer by the plaintiff to that overruled; answer to the cross-bill and replication thereto; and upon the issue thus joined, a trial was had upon the merits of the case; and it is too late after this, to avail itself of such defense by pleading in abatement the disability of the plaintiff to sue. In the federal practice, a demurrer is a general appearance (Jones v. Andrews, 10 Wall. [U. S.] 327, 19 L. Ed. 935; Foster, Fed. Prac. [3d Ed.] 270); and under the laws of the state of West Virginia (Code, c. 125, § 16), objections to the jurisdiction of the court have to be pleaded in abatement; and are not allowed, after the defendant has pleaded in bar, or answered to the declaration or bill; or after a rule to plead, or a decree of conditional judgment, nisi. Nothing is better settled than that after a plea in bar, a plea in abatement will not be received, except for new matter arising after the commencement of the suit. 1 Chitty (16th Am. Ed.) bottom page 569; 4 Min. Inst. (1st Ed.) 625. In this case, no plea in abatement has ever been filed, and none could have been received after the filing of the demurrer; and certainly not after the filing of the answer, the demurrer having been overruled. Livingston v. Story, 11 Pet. (U. S.) 351, 9 L. Ed. 746; Cook v. Burnley, 11 Wall. (U. S.) 659, 661, 20 L. Ed. 29; Spencer v. Lapsley, 20 How. (U. S.) 264, 267, 15 L. Ed. 902; Insley v. United States, 150 U. S. 515, 14 Sup. Ct. 158, 37 L. Ed. 1163; Hollins v. Brierfield Coal Co., 150 U. S. 371, 14 Sup. Ct. 127, 37 L. Ed. 1113; Riley v. Jarvis, 43 W. Va. 43, 49, 26 S. E. 366; Simpson v. Edmiston, 23 W. Va. 675; Abell v. Penn, 18 W. Va. 400; Washington v. Hobson, 15 Grat. (Va.) 122; Middleton v. White, 5 W. Va. 572.

Third. The contention that the right of lien was lost by the Tennis Bros. Company, because of the agreement to receive one-half of the amount to be paid it under the contract, in first mortgage bonds of the defendant company, at 90 cents on the dollar, is, to our minds, clearly untenable. This privilege on the part of the defendant to pay one-half of the amount agreed on in bonds at a reduced rate, instead of money, was an optional one, which was not availed of by it; but, on the contrary, instead of tendering bonds, it canceled the contract with the plaintiff, deprived it of the right to further carry out the contract, and at the same time denied all liability either because of any

service rendered under the same, or by reason of the cancellation thereof; and after a long and bitter controversy between them, growing out of these conditions, upon the court's ascertainment of the sum actually due to the plaintiff at the time of the breach of the contract by the defendant, for work and labor performed under the contract, such amount became a debt due unconditionally, and payable in money; and the defendant should not for a moment be allowed at the end of such a contest, then to avail itself of the benefit of discharging its liability by tendering its own securities, which might prove valueless, and probably were greatly depreciated. Upon its electing to cancel the contract, making it impossible for the plaintiff to execute same, and its refusal to pay the plaintiff for the work it had actually performed, thereby forcing it to resort to the courts to secure relief under its contract, the defendant company then and there ceased to occupy the favored position of having the right to tender its obligations under the provisions of the contract between them, as distinguished from paying the amount finally ascertained to be due by it, as any other litigant would have to do. Marlor v. Texas & P. R. Co. (C. C.) 21 Fed. 385; McNitt v. Clark, 7 Johns. (N. Y.) 465; Gilbert v. Danforth, 6 N. Y. 585; Stephens v. Howe, 2 Jones & S. (N. Y.) 133; Stewart v. Donelly, 4 Yerg. (Tenn.) 177; Choice v. Moseley, 1 Bailey (S. C.) 136, 19 Am. Dec. 661; Butcher v. Carlile, 12 Grat. (Va.) 520; Church v. Feterow, 2 Pen. & W. (Pa.) 301; Trowbridge v. Holcomb, 4 Ohio St. 38; Perry v. Smith, 22 Vt. 301; Mettler v. Moore, 1 Blackf. (Ind.) 342. As to whether the complainant had a lien for the amount thus found to be due it, and the order of priority of such lien, the defendant company having broken the contract, and being itself in the hands of a receiver, should at least be estopped from gainsaying it; and so far as this litigation is concerned, no other lienor has appeared to interpose such objection.

Fourth. It is finally insisted that the plaintiff is not entitled to the first lien upon the property of the defendant company; and that in no event should the lower court in this proceeding have decreed in its favor, and for the sale of the property, because of the pendency of the suit in the federal court in Pennsylvania, in which the affairs of the defendant company were being wound up, and its estate administered. So far as the first lien is concerned, while the opinion of the court does say that the right to the first lien existed in behalf of the plaintiff, the decree does not specifically so adjudicate; but merely that there exists a lien, and directs sale of the property. We think that so far as this record shows, this plaintiff was entitled to a first lien upon the property sought to be subjected to its lien; but that the court below was right in decreeing in favor of the plaintiff, and for a sale of the property to pay the indebtedness adjudged to be due, there can be to our minds no serious question. What might have been the duty of the court respecting the ascertainment of liens, or the consideration to be shown to the pendency of the suit in the federal court in Pennsylvania, is a matter that we do not feel called to pass upon; since the question of the existence of other liens, and the determination of rights arising under them between the holders of the same, and the plaintiff, was

145 F.—30

not asked at the hands of the court below. Nor was the pendency of the receivership suit in the federal court in Pennsylvania, set up until after the decree of sale herein in favor of the plaintiff; and it is too late to raise these questions for the first time upon appeal. To give consideration to them, would enable the defendant to withhold such defense until after the decision upon the merits of the case; and then avoid the effect of an adverse determination, by raising matters in no way in issue before the trial court. We think that the plaintiff was clearly entitled to the relief afforded it in the collection of its debt, by the decree of the court below, and that there was no error therein, as against which relief can be obtained in this court.

The decree of the lower court will be affirmed, with costs.

Affirmed.