JOHNSON, P. J.
The question involved in this appeal concerns the jurisdiction of the municipal courts in actions to foreclose liens claimed by contractors and subcontractors under the Mechanic’s Lien Law of this state.
As originally established by the act of 1925 (Stats. 1925, p. 648), the municipal courts were not invested with jurisdiction to enforce or foreclose liens on real property; but by the amendment made in 1929 (Stats. 1929, p. 837), the jurisdiction was expanded; and, among other enlargements, an added measure of equity jurisdiction was conferred. The portion of the amendment calling for construction in this case reads as follows: “Each municipal court shall have jurisdiction in all actions to enforce and foreclose liens of mechanics, materialmen, artisans, and laborers where the amount of such liens is two thousand dollars or less; provided, that where an action is pending in the superior court and affects property, which is also affected by an action pending in the municipal court to foreclose such a lien, or where the total amounts of such liens sought to be foreclosed against the same property aggregate an amount in excess of two thousand dollars, the municipal court, upon motion of any interested party, shall order such action pending therein to be transferred to the proper superior court. ’ ’
The case at bar is an action to foreclose a lien for street work claimed under section 1191 of the Code of Civil Procedure for work done and materials furnished at an agreed price aggregating $1,020 in grading and paving the roadway in front of property now owned by the defendants and in laying curbs and installing side sewers. The contract was made between E. J. Gallagher as contractor and C. Campodonico as owner. Both of said parties died during the progress of the work; but the contract was completed and claim of lien was duly filed by Gallagher’s administrator. The plaintiff and the defendants are respectively successors in interest of the deceased contracting parties.
At the trial the plaintiff offered to prove the allegations of the complaint, and that in performance of the work the contractor had furnished materials, of a value equal to seventy-five per cent of the contract price, which had not been purchased for this particular work, but had been drawn *Supp. 768 from a general supply maintained 'in the street improvement business conducted in his lifetime by the contractor. Objection to the offer was made upon the ground that the court was without jurisdiction of an action to foreclose the lien of a contractor. The objection was sustained by the court; and it accordingly refused to hear any testimony, and entered judgment dismissing the action. From that judgment this appeal was taken.
It will be observed that the amendment of 1929 mentions “liens of mechanics, materialmen, artisans and laborers”, and omits specific reference to contractors or subcontractors. Accordingly, we are to endeavor to ascertain, by aid of the general canons of statutory construction, the real purpose and intent of the lawmakers and the fair import to be given to their language, in order to promote the genuine design of the enactment. The reason of the law is the life of the law, and to seek out the intent is .the primary function of the court. That quest requires the piercing of all disguises of verbal expression which tend to obscure the legislative will. For, “To know the law is not to grasp its mere words, but its force and power.” (1 Digest of Justinian, III, 17.)
Specific authority to enact a Mechanic’s Lien Law and provide for enforcement of liens thereunder is conferred upon the legislature by section 15 of article XX of the Constitution, which provides: “Mechanics, materialmen, artisans and laborers of every class shall have a lien upon the property upon which they have bestowed labor or furnished material for the value of such labor done or material furnished; and the legislature shall provide, by law, for the speedy and efficient enforcement of such liens.”
It will be observed that the description of the groups designated in the Constitution is the same as that in the amendment giving jurisdiction to the municipal courts, except that in the amendment the word “laborers” is not followed by the words “of every class”. Doubtless in framing the amendments, the words, “mechanics, materialmen, artisans and laborers”, were adopted because they were the descriptive terms used in the Constitution; and but for the omission of the words “of every class”, it could hardly be contended that the jurisdiction of the municipal court, within its monetary limitation, was any less extensive than that of the superior court.
*Supp. 769 Prior to 1929 the superior court had exclusive jurisdiction over- enforcement-of liens on realty; and the legislature in the exercise of its constitutional prerogative had enacted what is commonly referred to as the Mechanic’s Lien Law, embodied in chapter II of title IV, sections 1183 to 1203, of the Code of Civil Procedure. Section 1191, under which a lien is claimed in this action, gives a lien to any person who, at the request of the owner of real property, does work or furnishes materials in the performance of street work undertaken for the benefit of the property. That section is to be read in connection with section 1183, whereby a lien is given in general terms to “mechanics, materialmen, contractors, subcontractors,' artisans, architects, machinists, builders, miners, teamsters and draymen, and all persons of every class performing labor upon or bestowing skill or other necessary services, or furnishing materials” in the improvement of realty. This and other sections of the statute exhibit the legislature’s conception of the extent of its authority under the Constitution; and the amplified classification has served to give fuller meaning and definiteness to the general terms of the organic law.
Keeping in mind the language of the Constitution, are we then to say that by according to the municipal courts jurisdiction over liens of “mechanics, materialmen, artisans and laborers”, the legislature intended to shut the doors of those courts to contractors and subcontractors i
In considering this question, it is well to bear in mind the language of the court in Palache v. Pacific Ins. Co., 42 Cal. 416, 430, where it is said: “It is well settled that in the construction of statutes, for the purpose of ascertaining the legislative intent, regard is to be had not so much to the exact phraseology in which the intent has been expressed as to the general tenor and scope of the entire legislative scheme embodied in the act. Mere philology often sticks in the bark, and so becomes an obstruction rather than an aid to a correct exposition of the meaning of the statute.”
And in People v. Earl, 119 Cal. App. 69, 71, 72 [124 Pac. 887, 888], the court declared: “The function of the courts in construing statutes is not constricted to a view which shall give literal effect to every word and phrase appearing by the letter of the law. In that analysis *Supp. 770 reason must have its just proportion, and the intent of the lawmakers is to be ascertained by taking into account several considerations, as the history of the legislation upon the subject treated of, and concurrent legislation affecting the same or closely kindred subjects. The fact that the enforcement of a statute according to its literal import will have the effect of prohibiting otherwise necessary and useful acts may also furnish an entirely sufficient reason for concluding that the intent of its framers was not that it should so operate.”
See, also, Black on Interpretation of Laws, second edition, section 45.
While it is indeed the general rule that the will of the legislature is to be found in the language of the statute, yet strict construction is not a precise but rather a relative term. In interpreting the expression used, the court is free to study the history and purpose of the enactment and the previous state of the law on the subject, as well as other statutes in pari materia and the benefits sought to be provided. The presumption is that the legislature resorted to those same aids in pursuit of its purpose, and mere verbiage used by inadvertence or otherwise, which if literally interpreted would thwart the obvious design, will not be permitted, through narrow or strictly technical definition, to kill the spirit which gives life to the law. The ground and cause of creating the statute explain the intent; and the meaning attached to the words must be germane to the subject and consistent with rational deductions. (Carter v. Stevens, 211 Cal. 281, 286 [295 Pac. 28].)
In Bakkenson v. Superior Court, 197 Cal. 504, 510, 511 [241 Pac. 874, 877], rules for guidance in searching the intent of an enactment are given by the Supreme Court in quotations from some of its earlier decisions and from text-writers. Part of what is there stated reads as follows:
“In the case of Signal Hill v. County of Los Angeles, 196 Cal. 161 [236 Pac. 304], this court quoted with approval the following language from 2 Lewis’ Sutherland on Statutory Construction, sections 347, 376, viz.: ‘It is indispensable to a correct understanding of a statute to inquire first what is the subject of it, what object is intended to be accomplished by it. When the subject matter is once *Supp. 771 clearly ascertained and its general intent, a key is found to all its intricacies—general words may be restrained to it, and those of narrower import may be expanded to embrace it to effectuate that intent. When the intention can be collected from the statute, words may be modified, altered or supplied so as to obviate any repugnancy or inconsistency with such intention. . . . Words or clauses may be enlarged or restricted to effectuate the intention or to harmonize them with other expressed provisions. . . . The particular inquiry is not what is the abstract force of the words or what they may comprehend, but in what sense they were intended to be used as they were found in the act. The sense in which they were intended to be used furnishes the rule of interpretation, and this is to be collected from the context; and a narrower or more extended meaning is to be given according to the. intention thus indicated. ’ In the case of In re Haines, 195 Cal. 605 [234 Pac. 883], this court, again quoting from the author last above cited, said: ‘The mere literal construction of a section in a statute ought not to prevail if it is opposed to the intention of the legislature apparent by the statute; and if the words are sufficiently flexible to admit of some other construction it is to be adopted to effecutate that intention. The intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act. While the intention of the legislature must be ascertained from the words used to express it, the manifest reason and the obvious purpose of the law should not be sacrificed to a literal interpretation of such words. Words or clauses may be enlarged or restricted to effectuate the intention or to harmonize them with other expressed provisions. Where general language construed in a broad sense would lead to absurdity it may be restrained. The particular inquiry is not what is the abstract force of the words or what they may comprehend, but in what sense they were intended to be used as they are found in the act.’ (Lewis’ Sutherland on Statutory Construction, 2d ed., sec. 376, p. 721.)”
Hence in construing a remedial statute, like a law granting and providing for enforcement of liens, attention is not always to be centered on the strict legal definition of the terms used. The words may receive either enlarged or *Supp. 772 restricted definition, when by fair intendment the act can thus be brought into consistent and harmonious operation. (Standard Sand & Gravel Co. v. City of New York, 172 App. Div. 80 [157 N. Y. Supp. 447, 448]; 2 Lewis’ Sutherland on Statutory Construction, 2d ed., sec. 348, p. 665.)
It is, of course, true that for ordinary purposes contractors and subcontractors are in a class apart from materialmen and laborers. A contractor is ordinarily understood to be a person who undertakes to supply the labor and materials for a specific improvement under a contract with the owner, while a subcontractor is one who engages with the contractor to perform under him some part of the original contract. We are, however, not dealing here with any question of the right to assert a lien, or with any question of'priority between contractors, materialmen and laborers. All such matters are governed by provisions of the lien law. We are concerned merely with the question of jurisdiction.
In some states the lien laws do not embrace contractors or subcontractors; but in California the legislature, giving a broad interpretation to the constitutional classification, enacted, in section 1183 of the Code of Civil Procedure, a statute naming not only mechanics, materialmen, artisans and laborers, but also contractors, subcontractors and numerous others who bestow labor or furnish materials in the improvement of property.
Prior to 1929 exclusive jurisdiction over the enforcement of such liens was vested in the superior court; but when municipal courts were established and their jurisdiction was extended to cases involving as much as $2,000, the amendment under review was adopted as part of the plan to relieve congestion in the superior court and to promote expedition and efficiency in the administration of the law. With that in view, a certain exclusive jurisdiction in lien cases was transferred to the municipal courts; and if the contention of the defendants were to prevail, the beneficial purpose of the amendment would be materially impaired, and the evil sought to be remedied would, in part at least, be perpetuated. It is not reasonably conceivable that the legislature intended to send a materialman with a claim of $2,000 into the municipal court and a contractor with a claim for the same amount into the superior *Supp. 773 court. Such a construction of the amendment would result not. only in inconvenience and hardship but in absurdity.
Moreover, under section 1195 of the Code of Civil Procedure it has been the practice and the established policy of the law to consolidate for trial all actions to foreclose liens affecting the same piece of property. The amendment in question aims to continue this policy; and yet the manifest intention would in certain instances be defeated by a restricted connotation of the terms, when considered with the proviso relative to transfer and consolidation of causes.
The evident intention of the amendment is that if a claimant of any class mentioned in section 1183 should institute in the superior court an action to foreclose his lien for an amount in excess of $2,000, then any action or actions begun in the municipal court and affecting the same property should be transferred to the superior court, and consolidated with the action there pending so as to have all rights adjudicated in one judgment. But if the municipal court lacks utter competency to entertain an action by a contractor or subcontractor, then under such construction an action begun in that court by a materialman or laborer could not be transferred to the superior court, to be consolidated and tried with an action by a contractor or subcontractor there pending, because the lien of the contractor or subcontractor would not, in the language of the amendment, be “such a lien” as the one put in suit in the municipal court, and hence would not be embraced within the purview of the proviso. It cannot be thought that the legislature planned to create any such serious and purposeless embarrassment to orderly and efficient conduct of judicial business. Wherever possible, a statute is to be construed in a way which will render it reasonable, fair and harmonious with its manifest purpose, and which will avoid mischievous or absurd consequences. (Uhl v. Badaracco, 199 Cal. 270, 284 [248 Pac. 917].) “Therefore,” as is said in People v. Merrill, 24 Cal. App. 206, 210 [140 Pac. 1075, 1077], “when a suggested construction of a statute in any given case necessarily involves a decided departure from what may be fairly said to be the plain purpose of the enactment, such construction will not be adopted to the exclusion of a possible, plausible interpretation which will promote and put in operation the legislative intent”.
*Supp. 774 This is especially true where a question of jurisdiction of a tribunal arises under a new statute; and while construction will not be pressed beyond the fair import of the legislative grant, yet doubts may be resolved in favor of jurisdiction, unless some established rule of law is violated. (Endlich on Interpretation of Statutes, sec. 157; Kansas City v. Summerwell, 58 Mo. App. 246, 251; Smith v. People, 47 N. Y. 330, 341; Butler & Vale v. United States, 43 Ct. of Cl. 497, 517.)
And while statutes which deprive a court of jurisdiction are strictly construed, the reverse is the rule when jurisdiction is extended, in which ease liberality of construction is sanctioned. (2 Lewis’ Sutherland on Statutory Construction, 2d ed., sec. 569, p. 1053.)
The defendants contend, however, that in construing the amendment, the rule, expressio unius, exclusio alterius, should control. This is frequently a helpful rule; but it is always to be subordinated to the primary rule that the intent shall prevail over the letter and, wherever possible, the letter will be so read as to conform to the spirit of the act.
In Endlich on Interpretation of Statutes, section 337, expression is given to this cardinal canon of construction in these words: “The paramount object, in construing penal as well as .other statutes, is to ascertain the legislative intent; and the rule of strict construction is not violated by permitting the words to have their full meaning, or the more extensive of two meanings, where best effectuating the intention. They are, indeed, frequently taken not in their strict technical sense, if that would defeat, but in a more popular sense, if that will uphold, and carry out the intention of the legislature, but in the widest sense, sometimes in a sense more wide than etymologically belongs or is popularly attached to them, in order to carry out the legislative intent, or, to use Lord Coke’s words, to suppress the mischief and advance the remedy. Nor is the rule of strict construction ever violated by permitting the words of a statute to have their full meaning, or by the application of common sense to its terms, in order to avoid an absurdity.”
In the light of the constitutional mandate, the previous course of legislation and the exposition of the provisions of our Mechanic’s Lien Law in the decisions of this state, it would be unreasonable to attribute to the legislature a de *Supp. 775 liberate purpose to exclude contractors and subcontractors from access to the municipal courts. Doubtful or ambiguous^ expressions are to be interpreted with reasonable liberality in furtherance of the obvious purpose rather than in a way to leave an omission. Treating that subject, the court in Young v. Regents of the University of Kansas, 87 Kan. 239, 261 [Ann. Cas. 1913D, 701, 124 Pac. 150], while recognizing the duty to refrain from judicial legislation, said, quoting in part from English decisions:
“Nevertheless, it is the duty of all courts to avoid, if possible, an interpretation of a statute which would reduce a sincere effort on the part of the legislature to ameliorate social conditions and promote the welfare of the people to a mere stage play with the chief actor omitted.
“ ‘We ought not to create a casus omissus by interpretation save in some ease of strong necessity. . . . Fry, L. J., properly says, “No casus omissus can be admitted, or, I should rather observe, ought to be created.” ’ (Lord Fitzgerald in Mersey Docks & Harbour Board v. Henderson Brothers, [Law Rep. 1888] 13 App. Cas. 595, 607, 608.)
“ ‘Whenever the case is clearly within the mischief, the words must be read so as to cover the case if by any reasonable construction they can be read so as to cover it, though the words may point more exactly to another case; this must be done rather than make such a case a casus omissus under the statute. ’ (Cleasby, B., in Scott v. Legg, [Law Rep. 1876-77] 2 Exch. Div. 39, 42.)
“To accomplish this purpose the meaning of words may be expanded (Barlow v. Ross, [Law Rep. 1890] 24 Q. B. D. 381), or limited and restricted (In re Brockelbank, [Law Rep. 1889] 23 Q. B. D. 461), or words may be eliminated (Stone v. Mayor, &c., of Yeovil, 45 L. J., (N. S.) 657), or others substituted (Rex v. Vasey, [Law Rep. 1905] 2 K. B. D. 748), or necessary words may be supplied. In delivering his judgment in the House of Lords in the case of Langston & Others v. Langston & Others, 2 Cl. & Fin. 194, 243, Lord Brougham made use of the following language:
“ ‘There are two modes of reading an instrument; where the one destroys and the other preserves, it is the rule of law and of equity, following the law in this respect (for it is a rule of common sense, which I trust is common to both sides of Westminster Hall) that you should rather lean towards *Supp. 776 that construction which preserves, than towards that which destroys. Tit res magis valeat quam pereat is a rule of common law and common sense; and much the same principle ought surely to be adopted where the question is, not between two rival constructions of the same words appearing in the same instrument, but where the question is on so ready an instrument as that you may either take it verbally and literally, as it is, or with a somewhat larger and more liberal construction, and by so supplying words as to read it in the way in which you have every reason to believe that the maker of it intended it should stand; and thus again, according to the rule ut res magis valeat quam pereat, to supply, if you can safely and easily do it, that which he per incuriam omitted, and that which instead of destroying preserves the instrument; which, instead of putting an end to the instrument and defeating the intention of the maker of it, tends rather to keep alive and continue and give effect to that intention. ’ (P. 243.) ”
The Constitution places the legislature under duty to provide by law for the speedy and efficient enforcement of liens of mechanics, materialmen, artisans and laborers of every class who “have bestowed labor or furnished material” in the improvement of property. In Macomber v. Bigelow, 126 Cal. 9, 14 [58 Pac. 312], the word “bestow” was held to have a broader meaning than the word “perform”, and to indicate an intention to give a contractor or subcontractor a lien for labor which he caused his employees to perform. In like manner in Barrett-Hicks Co. v. Glas, 14 Cal. App. 289, 302 [111 Pac. 760], the court declared that it would be a singular principle which would preclude a subcontractor, who had agreed to furnish materials for a structure and to put them in place, from having a lien because the labor had been performed by his employees instead of by himself personally.
' An interpretation which would, place obstacles in the path of those who have been active in creating the improvement and would lead to impractical consequences is not to be indulged, if a fair and practical interpretation is equally justified.
The Constitution of North Carolina required the general assembly to “provide by proper legislation for giving to mechanics and laborers an adequate lien on the subject *Supp. 777 matter of their labor”; and the statute passed in obedience to this requirement gave a lien “for the payment of all debts contracted for work done or materials furnished”. Under these provisions it was held in Lester v. Houston, 101 N. C. 605, 609 [8 S. E. 366], that a lien was given in favor of a contractor under whom his employees and agents worked.
In Michigan, the contention was raised in Shaw v. Bradley, 59 Mich. 199, 204 [26 N. W. 331], that an independent contractor was not entitled to a lien under a statute giving a lien to any person performing labor or services in cutting, banking, driving or running logs. The court declared that the rule qui per alium facit, per seipsum facere videtur was legally applicable to the general contractor having servants or sublaborers under him. “This,” said the court, “is the natural construction of the law, and is the uniform construction given to the law relative to liens upon real estate for the labor and materials entering into improvements thereon; ’ ’
In like manner under a statute of Minnesota giving a lien for “labor or services” a contractor or subcontractor was held in Carver v. Bagley, 79 Minn. 114, 116 [81 N. W. 757], to be entitled to a lien for cutting, hauling or banking logs.
And in Indiana in McElwaine v. Hosey, 135 Ind. 481, 489 [35 N. E. 272], a teamster who had hauled materials with his team for use in drilling an oil-well was brought within the provisions of a statute in favor of mechanics, laborers and materialmen.
Again, in numerous instances architects have been included in the category of laborers under laws giving a lien for labor performed or materials furnished. (Stryker v. Cassidy, 76 N. Y. 50, 53 [32 Am. Rep. 262]; Hughes v. Torgerson, 96 Ala. 346, 348 [38 Am. St. Rep. 105, 16 L. R. A. 600, 11 South. 209] ; Knight v. Norris, 13 Minn. 473 (Gil. 438); Wangenstein v. Jones, 61 Minn. 262, 264 [63 N. W. 717]; Mutual Benefit Life Ins. Co. v. Rowand, 26 N. J. Eq. (11 C. E. Green) 389, 397; Phoenix Furniture Co. v. Put-in-Bay Hotel Co., (Ohio) 66 Fed. 683, 685.)
In West Virginia a statute accorded a lien to “every workman, laborer, or other person who shall do or perform any work or labor by virtue of any contract for an incorporated company doing business within state”. In Wetzel *Supp. 778 & T. Ry. Co. v. Tennis Bros. Co., 145 Fed. 458, 462, 468 [7 Ann. Cas. 426], this statute was liberally construed in favor of a corporation which had contracted to construct an electric railway. And under a statute of Florida which gave a lien to any person “who shall perform labor upon or for the benefit of any railroad,” the court in Couper v. Gaboury, 69 Fed. 7, ruled that the benefits were not meant to be confined to wageworkers alone, but extended to contractors and subcontractors likewise.
In New York one of the owners of a party-wall in an unsafe condition, being unable to induce his fellow owner to join in making repairs, had the work done at his own ex- ■ pense and then filed a lien for one-half the amount. Taking a broad view of the statute, the court expressed itself in Kerwin v. Post, 120 App. Div. 179 [104 N. Y. Supp. 1005] as follows: “While the terms ‘contractor’, ‘subcontractor’, ‘laborer’, and ‘materialmen’ refer primarily to the man who has a formal contract with the owner, or a subcontract with the contractor, or who performs manual labor, or furnishes material, they also embrace, we think, the man who buys the labor and materials which enter into the improvement.”
These cases all illustrate the application of the rule of interpretation which in Maxwell on the Interpretation of Statutes, seventh edition, page 198, is couched in these words: “Where the language of a statute, in its ordinary meaning and grammatical construction, leads to a manifest contradiction of the apparent purpose of the enactment, or to some inconvenience or absurdity, hardship or injustice, presumably not intended, a construction may be put upon it which modifies the meaning of the words, and even the structure of the sentence. This may be done by departing from the rules of grammar; by giving an unusual meaning to particular words; by altering their collocation; by rejecting them altogether; or by interpolating other words, under the influence, no doubt, of an irresistible conviction that the legislature could not possibly have intended what its words signify, and that the modifications thus made are mere corrections of careless language and really give the true meaning.”
In the defendants’ brief certain cases are cited wherein contractors and subcontractors are differentiated from laborers and materialmen. That such distinctions are pre *Supp. 779 served for various specific purposes will not be disputed. We have examined the cases cited; and without detailing the facts, it is sufficient to say that we do not find any of the decisions invoked pertinent to the jurisdictional question, here involved. The California cases cited on the point are Miltimore v. Nofziger Brothers Lumber Co., 150 Cal. 790 [90 Pac. 114], and Hihn-Hammond Lumber Co. V. Elsom, 171 Cal. 570 [Ann. Cas. 1917C, 798, 154 Pac. 12]. In these cases the court was dealing with a section of the lien law in existence at that time, but repealed in 1911, which undertook to establish certain priorities between different classes of claimants. It was held that the section in question was unconstitutional in so far as it attempted to give manual laborers priority over materialmen, but was constitutional in preferring laborers and materialmen to contractors and subcontractors. It was in relation to the rank of the different liens that the differentiation of claimants was made, and nowhere in this state has it been held that a contractor or subcontractor may not “bestow” labor and furnish materials through others employed by him or acting at his instance.
The amendment conferring jurisdiction over enforcement of liens of mechanics, materialmen, artisans and laborers is intended, like the constitutional provision itself, to have a broad and comprehensive application. In the use of those words in the statute no distinction is made between-skilled and unskilled labor, or between manual labor and the service of one who provides or “bestows” and directs the labor of others acting in his behalf. All persons who perform or bestow labor in the construction of a building are brought within the statute regardless of the particular kind of service or the grade of their employment. (Stryker v. Cassidy, 76 N. Y. 50, 52 [32 Am. Rep. 262]; Hughes v. Torgerson, 96 Ala. 346, 348 [38 Am. St. Rep. 105, 16 L. R. A. 600, 11 South. 209].) And just as the contractor, by a fair intendment, may be deemed a laborer in so far as he provides or bestows labor, so may he be deemed a materialman within the spirit of the enactment in so far as he causes material to be furnished at his expense. In asserting his lien for labor and materials combined, he may reasonably be regarded as doing so in the duplex character of laborer and materialman.
*Supp. 780 While the views expressed have been in relation to contractors and subcontractors at large, they apply with still greater force to contractors asserting liens for street work, as in this particular case, under section 1191 of the Code of Civil Procedure. That section gives to any person performing street work at the request of an abutting owner a lien “for his work done and materials furnished”.
Assuredly it is not contemplated in that section that the contractor must personally perform the labor or personally manufacture the materials. He has his lien because of the benefits bestowed by the labor and materials supplied at his expense. And in the present case there was an offer to prove that the value of the materials furnished from the contractor’s general supply on hand represented seventy-five per cent of the contract price. Since the value of the materials equaled three-quarters of the contract price, it would require no forced interpretation to include the contractor within the description of a materialman for the purposes of an action in the municipal court to enforce his lien. (Bennett v. Davis, 113 Cal. 337, 339 [54 Am. St. Rep. 354, 45 Pac. 684].)
In our opinion, however, the comprehensive terms of the statute are intended to embrace contractors and subcontractors in general; and an equitable interpretation in promotion of the evident design of the legislature leads us to conclude that enforcement of their liens, subject to monetary limitations, is within the jurisdiction of the municipal courts.
The judgment of dismissal is reversed and the cause remanded for a trial on the merits.
Conlan, J., and Goodell, J., concurred.