**T. F. KORHERR, Appellant,**

v.

**A. J. BUMB, Trustee in Bankruptcy of Mallard Pond Builders, Inc., Bankrupt, Appellee.**

**No. 16037.**

United States Court of Appeals
Ninth Circuit.
Dec. 10, 1958.

---

Edgar C. Keller, San Bernardino, Cal., for appellant.

Tony Geram, Fontana, Cal., William Tiernan, Los Angeles, Cal., for appellee.

Before BARNES, HAMLEY and HAMLIN, Circuit Judges.

HAMLIN, Circuit Judge.

This is an appeal from an order of the District Court, Southern District of California, Central Division, approving and adopting a report of the Referee in Bank-

ruptcy. The case is before this Court upon an agreed statement of facts.

There is no question of the jurisdiction of the court below, nor of this Court.

It appears that Mallard Pond Builders, Inc., the bankrupt herein, engaged in a construction project which included the erection of many houses. The bankrupt obtained construction loans from a predecessor of Perpetual Savings & Loan Association, hereinafter Perpetual, and entered into a series of construction loans with the lending agency. These loan agreements provided, *inter alia,* that the proceeds of the loans would be disbursed as progress payments in accordance with agreed schedules.

Bankrupt had no general contractor for the whole project, but did employ one Schmidt, the holder of a general contractor's license, to supervise all construction. T. F. Korherr, hereinafter Appellant, a licensed flooring contractor, entered into a contract with the bankrupt to furnish the material and labor in installing flooring in certain houses to be constructed. The bankrupt entered into numerous other similar contracts with plumbing contractors, electrical contractors, sheet metal contractors, etc., in the construction project.

Appellant having been paid only in part for the flooring he furnished and installed, filed with Perpetual pursuant to Section 1190.1(h) of the Code of Civil Procedure of California a so-called "stop notice" requesting the withholding of further payments to Bankrupt in an amount sufficient to cover Appellant's unpaid claim. It is agreed by the parties that this stop notice was filed within the time required by law and prior to bankruptcy, and that it was accompanied by a bond as required by Section 1190.1(h). It is also agreed that pursuant to law, Appellant duly and properly filed an action in the proper court on the stop notice. It is further agreed that at the time Appellant served his stop notice on Perpetual, that company held funds in the Bankrupt's construction loan accounts sufficient to satisfy all stop notice claims, including that of Appellant.

The present controversy arises out of an order to show cause based on the Trustee in Bankruptcy's petition alleging the construction loan funds constituted an asset of the bankrupt estate. Appellant claimed that to the extent necessary to satisfy his stop notice, the funds in the construction loan accounts were his and not an asset of the bankrupt estate.

Pertinent portions of Section 1190.1 (h) and Sections 1181 and 1184.1 of the Code of Civil Procedure are set out in the margin.[1]

---

1. At all times relevant herein, C.C.P. § 1190.1(h) provided, in part, as follows:

"§ 1190.1

"(h) Notice to equitable owner; withholding funds.

"Any of the persons mentioned in Sections 1181 and 1184.1, except the contractor at any time prior to the expiration of the period within which claims of lien must be filed for record * * * may, in any instance in which the funds with which the cost of the work of improvements are * * * to be defrayed from the proceeds of a building loan, give to the mortgagee, beneficiary under deed of trust, or assignee or successor in interest of either, or to any escrow holder or other party holding any funds furnished or to be furnished by the owner or lender or any other person as a fund from which to pay construction costs or arising out of a construction or building loan, a notice similar to the one provided for in subdivision (a) of this section, whereupon the person so given such notice under this subsection may withhold funds to answer such claims and any lien that may be filed therefor, but shall be under no obligation to do so unless a bond is furnished as hereinafter provided. * * * "

At all times relevant herein, C.C.P. § 1181 provided, in part, as follows:

"§ 1181. Liens of construction mechanics, materialmen, contractors, etc.

"Mechanics, materialmen, contractors, subcontractors, artisans * * * and laborers of every class performing labor upon * * * or furnishing materials to be used or consumed in * * * the construction, alteration, addition to, or repair * * * of, any building, structure, or other work of improvement shall have a lien upon the property upon which they have bestowed labor or furnished materials * * * for the value

The Referee and the District Court held that Appellant "is a contractor and therefore not entitled to avail himself of the stop notice remedy."

■ The right to a mechanic's lien is guaranteed by the Constitution of California Article 20, Section 15. The statutes of California have long contained provisions implementing the Constitutional guaranty. A stop notice, or a notice to withhold, is not identical with a mechanic's lien, but is an additional or cumulative remedy. Weldon v. Superior Court, 1903, 138 Cal. 427, 71 P. 502; Diamond Match Co. v. Silberstein, 1913, 165 Cal. 282, 131 P. 874.

The effectiveness, however, of mechanic's liens have been impaired by amendments to the California law providing that mortgages or trust deeds, by means of which the construction funds are secured, recorded before the commencement of the construction work, are senior in priority to liens recorded by persons furnishing labor and material to a construction project. The law formerly provided, in Section 1184 of the Code of Civil Procedure, that stop notices might be served upon the owner, requesting that he withhold from a person in the position of a general contractor moneys sufficient to pay the labor and materialmen. In later years, however, lending agencies have adopted the practice of executing loan agreements with the owner providing that the lending agency retain the proceeds of the loan in a separate fund and that payments be made from that fund directly to the persons entitled thereto rather than to the owner. In this case, such a loan agreement was signed by the owner and the savings and loan association.[2]

of such labor done or materials furnished * * *, whether done or furnished at the instance of the owner or of any person acting by his authority or under him, as contractor or otherwise. (Added Stats.1951, c. 1159, p. 2941, § 1.)"

C.C.P. § 1184.1 provides, in part, as follows:

"§ 1184.1. Improvement of lots or tracts of land

"Any person who, at the instance or request of owner (or any other person acting by his authority or under him, as contractor or otherwise) of any lot or tract of land, grades, * * * or otherwise improves the same * * * or makes any improvements in connection therewith, has a lien upon said lot or tract of land for his work done and materials furnished. (Added Stats.1951, c. 1159, p. 2943, § 1.)"

2. "The net proceeds of this loan (as the term 'net proceeds' is defined in the Borrower's Instructions executed in connection with this loan), upon recordation of the Deed of Trust, are to be placed on deposit with the Association, together with the sum of $ none to be deposited by the undersigned owner, in a special non-interest-bearing account entitled 'Loans In Process—Building Loan Account,' and the undersigned agree that the deposit of said sums in said account shall be conclusively deemed a full and complete consideration for said note and Deed of Trust and that such consideration shall be deemed to have been fully passed and paid to the undersigned owner. Such funds are to be paid out, and are to be used, for the purposes set out herein. Subject to the provisions of this agreement, the undersigned, and each of them, hereby irrevocably assign to the Association, as security for the obligations secured by said Deed of Trust and the due performance of this agreement by the undersigned or any of them, and for any other joint and/or several obligation or obligations of the undersigned or any of them to the Association, all of the right, title and interest of the undersigned or any of them in and to said account and all monies to be placed therein, specifically including amounts that may be deposited in said account from time to time in the future either by the undersigned or by the Association. The undersigned acknowledge that they, or any of them, have no right to the monies in said account other than to have the same disbursed by the Association in accordance with this agreement, which disbursements the Association, upon its acceptance of this agreement herein, agrees to make, for the purpose, and upon the conditions set out herein. * * *

"The undersigned, and each of them, agree that all funds received hereunder are received in trust for the purpose of paying in full all contractors and/or materialmen and/or laborers (other than the undersigned) then or theretofore engaged in said construction, and that the undersigned shall not have any beneficial interest in said funds unless and until said purpose has been fulfilled."

■ Appellee contends that the word *"contractor"* in the phrase *"except the contractor"* [emphasis added] in Section 1190.1(h) means *any* contractor supplying labor or material to the project.

We cannot agree. If that were true, there would be no reason for the use of the word "the" in describing the contractor. The word "a" would be more appropriate. If all the various contractors on a job, such as plumbing, brick, cement, electrical, and others, were to be included within the exception, the plural word *contractors* should have been used.

Section 1184 of the Code of Civil Procedure, which provided—until its repeal in 1951—, for the giving of stop notices, also used the language "except the contractor" which is found in Section 1190.1 (h). This latter section was enacted in 1951, the same year that Section 1184 was repealed.

A reading of Section 1184[3] indicates that the words "except the contractor" referred to the general or prime contractor. By its terms it could not be contended that individual contractors doing only portions of the work would be ex-

3.  "§ 1184. Notice of mechanics' liens.
     "Any of the persons mentioned in the preceding section, except the contractor, and all persons, firms and corporations, excluding the contractor, performing work or furnishing materials, or both, upon any public improvement, including highways, streets, wagon roads, viaducts or sewers, may at any time, prior to the expiration of the period within which claims of lien must be filed for record, as prescribed by the provisions of section 1187 of this code, give to the owner a notice that they have performed labor or furnished materials, or both, to the contractor or other person acting by the authority of the owner, or that they have agreed to do so, stating in general terms the kind of labor and materials and the name of the person to or for whom the same was done or furnished, or both, and the amount in value, as near as may be, of that already done or furnished, or both, and of the whole agreed to be done or furnished, or both, and any of said persons who shall on the written demand of the owner refuse to give such notice shall thereby deprive himself of the right to claim a lien under this chapter. Such notice must be verified by the claimant, or by some person acting in his behalf, and may be given by delivering the same to said owner personally, or by leaving it at his residence or place of business with some person in charge, or by delivering it to his architect, if any; provided, however, that in all cases in which said work is being done under a contract with the state, or with any public board, commission, or officer thereof, or with any political subdivision thereof, such notice must be filed, within said time, in the office of the controller, auditor or other public disbursing officer whose duty it is to make payments under the provisions of such contract or with the

commissioner, managers, trustees, officers, board of supervisors, board of trustees, common council or other body by whom the contract for the improvement was awarded. In the case of any contract of the state by or through the department of public works, such notice must be filed with the director of public works, and not with the state controller. No such notice shall be invalid by reason of any defect in form, provided it is sufficient to inform the owner of the substantial matters herein provided for. Upon such notice being given it shall be lawful for the owner to withhold, and in the case of property which, for reasons of public policy or otherwise, is not subject to liens in this chapter provided for, the owner or person who contracted with the contractor, shall withhold from his contractor sufficient money, and bonds, where bonds are to be issued in lieu of money, by the political subdivision which contracted for said work, due or that may become due to such contractor to answer such claim and any lien that may be filed therefor, including the reasonable cost of any litigation thereunder.

     "The word 'owner' as used in this section, includes the state or any public board, commission' or officer thereof, or any political subdivision thereof, whether the said work be done by or under the direction of said state, public board, commission or officer thereof, or any political subdivision thereof.—1931:1713.

     "§ 1184. Leg.Hist: A.1885:144; 1887:153; 1911:1315; 1919:452; 1921:-144.

     "See post, § 1202.

     "References: Mech's. Liens: McK. Dig. §§ 75–85; Cal.Pac.D. §§ 78, 116–126; C.J. §§ 180–198; 17 Cal.Jur. § 61; 36 Am.Jur. 90."

cluded from the right to file stop notices with the owner.

The mere fact that in this case Appellant made his contract with the owner for the doing of the flooring in various houses, rather than with a general or prime contractor, should not deprive him of the right which he would have if he agreed to do the same work in a contract entered into with a general contractor. The owner here was acting in the same way a general contractor would act.

■ In discussing the difference between an original or principal contractor and a subcontractor, it is said in Nelson on Mechanic's Lien Laws, Section 183:

> "But if his contract * * * is for work and materials for merely a portion of the entire improvement, he is a subcontractor. This is true even though his subcontract is made directly with the owner."

Appellant in this case was in the position of a subcontractor.

It is conceded by the Trustee that had Korherr been a subcontractor the stop notice would have been effective.[4] It is not reasonable to us to believe that the accident of a modern financial arrangement should cause one such as Korherr to be denied the protection the mechanic's lien laws traditionally provide. The financing arrangement here, not an uncommon one today, resulted in an agency of the lending institution disbursing progress payments to the various contractors and materialmen working on the construction project. Absent such an arrangement, the payments would have been made by the general contractor. Thus, those materialmen and those who performed the plumbing, electrical work, flooring and the like might serve stop notices on the builder or lender, informing him that the general contractor had not paid them. Because there *was* a general contractor, these plumbers, elec-

tricians, etc., were *subcontractors*, and payments in the amounts sufficient to pay for their services would be secured upon service of the stop notices.

In the instant case, Appellant has the same relationship to the construction project as do the subcontractors in the above described situation. The same reasons that led the legislature to provide for the stop notice for subcontractors and materialmen apply to Korherr. To hold that because there is no general contractor here Appellant does not qualify under the law is to place a reliance on form over substance that is not in keeping with the spirit of the law of mechanic's liens.

■■ It has been said that statutes relating to the enforcement of the mechanic's lien, being remedial in nature, should be liberally construed to effect their purpose. 32 Cal.Jur.2d § 7; Gallagher v. Campodonico, 1931, 121 Cal. App.Supp. 765, 5 P.2d 486; Burr v. Peppers Cotton Lumber Co., 1928, 91 Cal. App. 268, 266 P. 1025. Also, where words of exception are used, they are to be strictly construed to limit the exception. Piedmont & Northern R. Co. v. Interstate Commerce Commission, 1932, 286 U.S. 299, 52 S.Ct. 541, 76 L.Ed. 1115. See, generally, Sutherland on Statutory Construction, 3d Ed. §§ 4936 et seq. This is especially true where remedies are sought to be enforced, as in the instant case. Fleming v. Hawkeye Pearl Button Co., 8 Cir., 1940, 113 F.2d 52; Miller Hatcheries v. Boyer, 8 Cir., 1942, 131 F.2d 283.

Counsel have not been able to furnish the Court with any direct authority construing the phrase "except the contractor" in Section 1190.1(h), and we have found none.

Pugh v. Moxley, 1912, 164 Cal. 374, 128 P. 1037, 1039, relied upon by Appellee, is inapplicable. Though containing *obi-*

---

4. See C.C.P. § 1190.1(h) [Footnote 1, *supra*] which includes "Any of the persons mentioned in Sections 1181 and 1184.1, *except the contractor.* * * *" [Emphasis supplied]

C.C.P. § 1181 [Footnote 1, *supra*], listing those persons entitled to liens, lists both the *contractors* and *subcontractors*. Thus, as only the contractor is excluded by C.C.P. § 1190.1(h), the necessary inference is that subcontractors are among the class allowed to file stop notices.

*ter dictum* that "one may be an original contractor although he has agreed to do only part of the work required for the construction of a building," the case actually held, *inter alia*, that a hardware company that supplied and installed plumbing was a materialman and not an original contractor. Thus, the California Supreme Court held that the claimant's contract was not void because not in writing and recorded as required by the statute applicable to "original contracts."

Considering the obvious purpose of the section, the use of the words "the contractor" in the statute instead of "a contractor" or "the contractors," the unreasonableness of a construction that would, under the circumstances in this case, bar all individual contractors furnishing labor and materials to a project from using the stop notice procedure, we hold that Appellant was not barred from getting such benefit from Section 1190.1 (h) as he may obtain by filing a stop notice thereunder.

Judgment reversed.