MIDWEST FLOOR COMPANY,
Plaintiff,

and

Kelpe Contracting, Inc., Respondent,

v.

MICELI DEVELOPMENT COMPANY, Miceli Holding Company, Wells Fargo Bank, Husch Trustee, Inc., and First National Bank of St. Louis, Defendants,

and

Richard W. Preckel and Gayle M. Preckel, Appellants.

No. ED 92918.

Missouri Court of Appeals,
Eastern District,
Division One.

Dec. 29, 2009.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 22, 2010.

Application for Transfer Denied March 23, 2010.

244

Martin Blanchard, St. Louis, MO, for appellants.

Patrick Keefe, St. Louis, MO, for respondents.

Before KATHIANNE KNAUP CRANE, P.J., CLIFFORD H. AHRENS, J., and NANNETTE A BAKER, J.

NANNETTE A. BAKER, Judge.

### Introduction

This case involves the enforcement of a mechanics' lien filed by a contractor, Kelpe Contracting, against the builder Miceli Development Company, Miceli Holding Company and Miceli Homes, Inc. (Miceli) and the property owners, Richard and Gayle Preckel. The trial court granted summary judgment in favor of Kelpe, ordering Miceli Development and Miceli Holding Company to pay $127,766.50 for work performed on the property. A lien for the same amount was also levied against the property owned by the Preckels.

The Preckels appeal the judgment, claiming that summary judgment should not have been issued because genuine issues of material fact exist. We find no error and affirm.

### Background

Frank Miceli is the president of defendants Miceli Development Company, Inc., Miceli Holding Company, and Miceli Homes, Inc[1]. Miceli Homes owned the property when, on May 3, 2006, Kelpe entered into an agreement with Miceli Development to stabilize a slope on the property. The proposal was for "slope reinforcement & retaining wall base," and the estimated cost totaled $116,650.00.

According to the deposition testimony of Thomas Kelpe, the owner of Kelpe Contracting, the retaining wall was necessary to build a rear-entry garage driveway which abutted a steep ravine. Kelpe planned to excavate until he reached stable material and then fill it back in with shot rock. Kelpe began the excavation, but was unable to locate stable ground, and the parties agreed to stop the project and consult an engineer. On June 13, 2006 Kelpe sent Invoice # 580 for $35,229.

The record contains a second proposal dated September 21, 2006. This proposal is for "storm piping and fill placement for retaining wall." The estimated total is for $45,894.00. The proposal contains Kelpe's signature, but not Miceli Development's signature by Frank Miceli.

On September 22, 2006, the Preckels purchased the property from Miceli Homes, Inc.

Thomas Kelpe testified that because they were unable to locate stable ground, a new plan was developed to install a 48 inch wide pipe through the ravine, which would form a strong base, and then fill the area to make the retaining wall base. From February 8, 2007 until March 16, 1007, Kelpe did no work on the property. Thomas Kelpe testified that the work in the beginning of 2007 was sporadic due to the bad weather. Kelpe submitted invoice # 1203 for $87,759.50, dated February 19, 2007. Kelpe testified that on March 16, 2007 his employee worked for eight hours finishing the riprap, setting the tops and the manhole top, and completing other finishing work. He sent invoice # 1246 for $4,788.00, dated March 19, 2007. Kelpe also testified that he paid all the subcontractors who worked on the project.

Kelpe filed a lien for $127, 776.50 on September 13, 2007, and then filed its claim for Breach of Contract and Enforcement of Mechanics' Lien. Kelpe moved for summary judgment.

Miceli submitted an affidavit of Frank Miceli (Frank) in its response to Kelpe's motion for summary judgment which stated two contracts governed the work that Kelpe performed on the property. According to Frank Miceli, the first contract governed the excavation in the spring 2006, and was completed by June 6, 2006. The second contract governed the installation of a pipe across the property and two other adjacent lots. He also claimed he was charged twice as much as the estimated bid. However, in its answer to interrogatories, Miceli agreed that the final price of the contract with Kelpe was $127,776.50, and that this amount did not exceed the reasonable value of services for the work, labor or materials. In the fragmented portions of deposition included in the record, Frank testified that Kelpe started to stabilize the slope, and then

---

1. In its Statement of Mechanics' lien, Kelpe claims Miceli Development and Miceli Holding are alter egos of Miceli Homes, Inc. Frank

Miceli testified that he owns all the companies and that they all operate out of the same office.

determined that it could not be done and suspended the job. According to Frank, the parties later came back and "restarted the job based on the approved plans." He agreed that the retaining wall base could not be constructed until the pipe was installed.

The trial court granted Kelpe's motion for summary judgment and certified it as final pursuant to Rule 74.01(b). This appeal follows.

### Standard of Review

Whether a motion for summary judgment should be granted is a question of law and our review is essentially de novo. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Summary judgment is proper where the movant establishes the absence of any genuine issue of material fact and a legal right to judgment. *Id.* at 378. We will review the record in the light most favorable to the party against whom judgment has been entered. *Id.* at 376. Facts set forth by affidavit or otherwise in support are taken as true unless contradicted by the non-moving party's response. *Id.* We will affirm the trial court's judgment if it is sustainable on any theory. *Citibrook II, L.L.C v. Morgan's Foods of Missouri, Inc.*, 239 S.W.3d 631 (Mo.App. E.D.2007).

### Points on Appeal

In all three points on appeal, the Preckels claim the trial court erred in granting summary judgment because genuine issues of material fact exist. In their first point, they claim the statement of mechanics' lien did not set forth a just and true account of the work because it included non-lienable items, specifically work performed by subcontractors. In their second point, they assert that Kelpe's mechanics' lien was not timely filed because the last day of work on the property was February 8, 2007, not March 16, 2007. Finally, they allege two separate contracts governed the work performed on the property, and therefore, Kelpe was required to file two separate liens, the first of which is time barred.

### Discussion

The right to a mechanics' lien is not recognized at common law, but instead is created by statute. *Fleming–Gilchrist Constr. Co. v. McGonigle*, 338 Mo. 56, 89 S.W.2d 15, 18 (1935). See Sections 429.010 to 429.350 RSMo (Supp.2007). Section 429.010 RSMo, provides:

> Any person who shall do or perform any work or labor upon land, rent any machinery or equipment, or use any rental machinery or equipment, or furnish any material . . . for any building, erection or improvements upon land, . . . under or by virtue of any contract with the owner or proprietor thereof, or his or her agent, trustee, contractor or subcontractor, . . . upon complying with section 429.010 to 429.340, shall have for his or her work or labor done, machinery or equipment rented or materials . . . a lien upon such building, erection or improvements, and upon the land belonging to such owner or proprietor on which the same are situated.

Mechanics' lien laws are remedial in nature; "its purpose is to give security to mechanics and materialmen for labor and materials furnished in improving the owner's property." *R.L. Sweet Lumber Co. v. E.L. Lane, Inc.*, 513 S.W.2d 365, 371 (Mo. banc 1974). However, a lien claimant must substantially comply with statutory requirements. *Lake Ozark Const. Indus., Inc. v. Osage Land Co., L.L.C.*, 168 S.W.3d 471, 476 (Mo.App. W.D.2005).

The owner, his agent, contractor, or subcontractor of the property must have contracted for improvements or ma-

terials furnished to the property. Section 429.010; *St. Louis Concrete Prod. Mfg. Co. v. Walker*, 64 S.W.2d 131, 132 (Mo.App. 1933); *Hengstenberg v. Hoyt*, 109 Mo.App. 622, 83 S.W. 539, 540 (1904). "Within six months after the indebtedness has accrued," the lien claimant must file a "just and true account" of the amount of the lien and a true description of the property. Section 429.080; See *Missouri Land Dev. Specialties, LLC v. Concord Excavating Co., L.L.C.*, 269 S.W.3d 489, 497 (Mo.App. E.D.2008). The date the "indebtedness has accrued" is the last day work was performed or material incorporated. *United Petroleum Service, Inc. v. Piatchek*, 218 S.W.3d 477, 481–82 (Mo.App. E.D.2007); *Channing v. Brindley–Sullivan, Inc.*, 855 S.W.2d 463, 465 (Mo.App. E.D.1993). When a job is finished and indebtedness has accrued is a question of fact. *Channing*, 855 S.W.2d at 465.

■■ A "just and true account" forms the basis of the right to maintain a suit to enforce a mechanics' lien. *Missouri Land Dev. Specialties*, 269 S.W.3d at 497. Knowingly filing an untrue and unjust account vitiates the entire right of lien. *Id.* The purpose of "just and true" account requirement is to inform the landowner and other interested parties of "information sufficient to permit an investigation to determine whether the materials the claimant asserts he has furnished were actually used in the construction of the building, whether they were lienable items, and whether the amount charged is proper." *Id.* (citing *Commercial Openings, Inc. v. Mathews*, 819 S.W.2d 347, 349 (Mo. banc 1991)). Neither section 429.080 nor prior appellate precedent defines a "just and true account." Instead, a determination of what is "just and true" depends on the facts of each case. *Id.*

*Point I: Lienable Items.*

■ In their first point, the Preckels argue that Kelpe did not file a "just and true account" because it included work performed by subcontractors in the lien amount. They argue that contractors cannot maintain a lien for the work performed by subcontractors. Instead, they assert that each subcontractor must file a timely mechanics' lien and then assign its rights to the contractor. They claim that the mechanics' lien statute requires this, even in cases such as this one where the subcontractors have been paid by the contractor. Since the subcontractors were paid, they did not file mechanics' liens or assign them to Kelpe. Therefore, the Preckels conclude that Kelpe has wrongly included non-lienable items and thereby failed to file a just and true account of the lien. We disagree.

The Preckels do not cite caselaw to support their argument, and this issue appears to be one of first impression for Missouri appellate courts. They base this argument on the language of section 429.010, which provides, in pertinent part: "Any person who shall *do or perform any work* or labor upon land"[2] may have a lien upon the land. (emphasis added). The Preckels maintain that this section expressly limits the class of people who can claim a mechanics' lien to those who actually "engage in affirmative acts to improve the property by performing work." The Preckels claim that Kelpe cannot include the cost of the subcontractors' labor in the mechanics' lien because it did not actually perform the work of the subcontractors.

■ We decline to adopt the Preckels' strict construction of the mechanics' lien statute. "Statutes creating mechanic's

2. Section 429.010 also provides that others, such as those furnishing material or providing rental equipment, may maintain a lien.

liens are remedial in nature and should be given a liberal construction so as to effectuate their object and purpose and protect the claims of the mechanics and materialmen." *Glenstone Block Co. v. Pebworth*, 264 S.W.3d 703, 710–11 (Mo.App. S.D. 2008). We are to construe the statute "as favorably to the materialman as its terms permit." *Id.* at 711. The Preckels' proposed construction of the mechanics' lien statute would deny contractors security for the labor and materials they furnish in improving the property, and it would defeat the purpose of the statute.[3] In this case, Kelpe performed work on the property by furnishing labor through subcontractors. Kelpe paid all of its subcontractors. Any other construction of the statute would deny Kelpe security for the labor it furnished.

Therefore, we hold that lien claimants may include the work performed by subcontractors in their mechanics' lien. Point I is denied.

*Point III: Number of Contracts*

■ We examine the Preckel's third point next, where they assert that the work was governed by two separate contracts. According to the Preckels, the first contract was entered into on May 3,

2006 and ended on June 6, 2006, and the second contract began in September 2006 and ended on March 16, 2007. Because they had two separate contracts, the Preckels claim that a separate mechanics' lien must be filed for each. They contend that the amount of the June 6, 2006 invoice represents the amount due under the first contract and that it is not recoverable because it was not filed within six months. Conversely, Kelpe argues there was one continuous contract to construct a retaining wall base. It claims that the work stopped after it encountered difficulty with the excavation and that the project resumed in September after new plans were formulated.

■ Materials furnished under distinct contracts cannot be mingled in one account and a lien obtained for the aggregate amount. *Berkshire v. Hall*, 202 S.W. 414, 415 (Mo.App.1918); *Flanagan Bros. v. O'Connell*, 88 Mo.App. 1, 4 (Mo.App.1901). While this is a question of fact, whether there was a single or multiple contracts is immaterial because all the work went to the same general purpose of building a base for the retaining wall, and therefore, may be included in a single lien. *Badger Lumber Co. v. W.F. Lyons Ice & Power Co.*, 174 Mo.App. 414, 160 S.W. 49, 52

---

**3.** Other state courts have also held that contractors may include the work performed by subcontractors in their mechanics' lien under their mechanics' lien statutes. *In re Lightner*, 184 F.Supp. 825, 827–28 (D.C.Cal.1960); *Cent. Constr. Co., v. Blanchard*, 180 Neb. 62, 141 N.W.2d 416, 418 (1966); *Lanier v. Lovett*, 25 Ariz. 54, 213 P. 391 (1923); *Christman v. Salway*, 103 Or. 666, 205 P. 541, 548 (1922); *Gallagher v. Campodonico*, 5 P.2d 486, 492 (Cal.App. Dep't Super. Ct.1931). In *Blanchard*, the Supreme Court of Nebraska rejected the argument that a contractor could not include work performed by subcontractor. *Blanchard*, 141 N.W.2d at 418. In *Christman*, the Oregon Supreme Court held preventing contractors from maintaining a lien for work performed by subcontractors defeats the purpose of the mechanics' lien statute.

*Christman*, 205 P. at 548. That court stated: "The contractor is entitled to his lien, not only for his own labor, but for the labor of those under him, even though his workmen have taken out liens the effect is only to diminish the contractor's lien pro tanto." *Id.* (citing 27 Cyc. p. 84). In *Gallagher*, the court noted: "Assuredly it is not contemplated … that the contractor must personally perform the labor or personally manufacture the materials. He has his lien because of the benefits bestowed by the labor and materials supplied at his expense." *Gallagher*, 5 P.2d at 492. Similarly, the court in *Lightner* held, "[f]or it is elementary that a contractor, in order to be entitled to the lien need not do the work himself, but may do it through a subcontractor." *Lightner*, 184 F.Supp. at 828.

(1913); *Flanagan*, 88 Mo.App. at 4; *Bruns v. Braun*, 35 Mo.App. 337 (Mo.App.1889); *Page v. Bettes*, 17 Mo.App. 366 (Mo.App. 1885). In *Flanagan*, the court stated:

> The general rule is that where two distinct contracts were *in fact made*, as for different parts of the same work, the work done under each contract must be entire of itself. But where work done or material furnished all go to the same general purpose, as the building of a house or block of houses and buildings appurtenant thereto, though such work done or materials furnished were not contracted for on the same day or at the same time, yet if they were done and furnished as parts of a general improvement of the property, all such work and materials may be regarded within the meaning of the mechanic's lien statute as done and furnished under one contract and may be included in one lien account.

*Flanagan*, 88 Mo.App. at 4. All the materials and work in this case were provided to build a retaining wall base for the Preckels' rear entry garage. The labor under both proposals was furnished as part of this same general improvement to the property. The court in *Page* stated: "if the several parts form an entire whole, or are so connected together as to show that the parties had it in contemplation that the whole should form but one, and not distinct matters of settlement, the whole account must be considered as a unit, or as being a single contract." Frank Miceli testified that the installation of the pipe was a necessary step in the construction of the retaining wall base. We regard the installation of the pipe and the construction of the retaining wall base as one unit,

because the retaining wall base could not be constructed without the pipe. See *Progress Press–Brick & Machine Co. v. Gratiot Brick & Quarry Co.*, 151 Mo. 501, 52 S.W. 401, 403 (1899)(Bricks and press-brick, which were separately contracted for, may be regarded as being furnished under a single contract because they were all necessary parts of one whole plant.).

██ The Preckels rely on the proposition that when "the work stops and a new contract is later made to complete it, the new contract is separate and distinct from the old." *Schroeter Bros. Hardware Co. v. Croatian 'Sokol' Gymnastic Ass'n*, 332 Mo. 440, 58 S.W.2d 995, 1001 (1932)(citing *May v. Mode*, 142 Mo.App. 656, 123 S.W. 523 (1909)) [4]. The Preckels are correct that when work is abandoned and is later resumed under a new contract between different parties, the new contract will be separate and distinct from the old, and will not have priority over a deed of trust executed before the second contract. *May v. Mode*, 123 S.W. at 525. However, the work in this case was never abandoned, and the work was not continued by different parties. The parties stopped excavation in June, but continued to "work" on the project by formulating new plans to overcome unforeseen obstacles. Therefore, we hold that Kelpe may maintain a single lien for the work performed on the Preckels' property. Point III is denied.

*Point II: Last Day of Work*

██ In their second point, the Preckels contend the last day of work on the property was February 8, 2007, and therefore Kelpe's lien was not timely filed. There is no evidence in the record to support this contention. The only evidence in the rec-

---

**4.** The work in *Schroeter* did not stop, and a new contract was never formed to complete the building. This statement of the law was not necessary for the actual issue before the court, namely whether the contractor could include the additions to the original contract in his mechanics' lien. Therefore, it is not controlling authority for similar factual situations. See *State on Information of Dalton v. Miles Lab.*, 365 Mo. 350, 282 S.W.2d 564 (1955); *State ex rel. Anderson v. Hostetter*, 346 Mo. 249, 140 S.W.2d 21, 24 (1940).

ord regarding the last day of work was Kelpe's testimony that his employee worked for eight hours on March 16, 2007 finishing work under each proposal, and the corresponding job detail report which reflected that such work was performed. This work was not trivial or incidental. *Cf. Floreth v. McReynolds,* 205 Mo.App. 143, 224 S.W. 995, 998 (1920)(a contractor may not "hang an otherwise barred lien" on purely incidental and trivial work); *ITT Commercial Fin.,* 854 S.W.2d at 382. The lien was field on September 13, 2007, within six months after the last day of work on the property. Point II is denied.

### Conclusion

There were no genuine issues of material fact, and therefore, summary judgment was properly granted. The decision of the trial court is affirmed.

KATHIANNE KNAUP CRANE, P.J., and CLIFFORD H. AHRENS, J., concur.