

## Missouri Court of Appeals

### Southern District

### Division Two

KEHRER BROTHERS )
CONSTRUCTION, INC., )
      )
     Plaintiff-Respondent, )
      )
v. ) No. SD34000
      )
BANK OF VERSAILLES, ) **Filed: July 27, 2016**
      )
     Defendant-Appellant, )
      )
and )
      )
EDWIN J. GIRE, KENNETH O. )
McCUTCHEON, JR., and )
BUSEY BANK, )
      )
     Defendants. )

APPEAL FROM THE CIRCUIT COURT OF CAMDEN COUNTY

Honorable Kenneth M. Hayden

**AFFIRMED**

The Bank of Versailles ("Bank") appeals the judgment that found Bank's ownership

of certain real property in Osage Beach ("the property") to be subject to a mechanic's lien

and awarded the lienholder, Kehrer Brothers Construction, Inc. ("Contractor"), $740,153.89.

Contractor filed the lien to cover work it performed on the property between November

1

2007 and August 2010 for the previous owner, Edwin J. Gire ("Owner").[1]  Bank held a deed

of trust on the property, but it later became the owner via foreclosure.

In three points relied on, Bank contends "[t]he trial court erred in enforcing the

mechanic's lien . . . because":  (1) Contractor did not "perform any work" under a

"Subcontract Agreement" ("the contract") with Owner "as required by [section] 429.010.1";

(2) Contractor "did not file its Statement of Mechanic's Lien ['the lien statement'] within

the time required by [section] 429.080, in that the last item allowed by the trial court . . .

[was] for the month of December 2009 but [Contractor] did not file its [statement] until

February 14, 2011"; and (3) "the equipment rental charges" included in the mechanic's lien

"are not lienable pursuant to [section] 429.010.2[,]" in that Contractor's improvements

"were not on commercial property."[2]

---

[1] This is the second appeal in this case.  *See* ***Kehrer Bros. Constr., Inc. v. Gire***, 453 S.W.3d 820, 827 (Mo. App. S.D. 2014) ("***Kehrer I***") (case remanded for the trial court to "reopen the evidence to permit [Contractor] to introduce further evidence establishing that [Contractor's] work was performed at the real property described in the lien statement and for any other proceedings consistent with this opinion").  Bank is the only defendant to file a brief in this appeal.  As in the first appealed ruling, the judgment misspells "Kehrer" as "Keher."  *Id.* at 821 n.1.  The property is identified in the judgment by street address and the following legal description:

> All of Lot 9R of A SUBDIVISION OF LOTS 8, 9 AND 10, AMENDED PLAT TO HARBOUR HEIGHTS ESTATES, a subdivision in Camden County, Missouri, according to the Plat thereof on file and of record in the Office of the Recorder of Deeds, Camden County, Missouri.

> Together with a 2 well encapsulated steel and concrete dock.

[2] During the time period at issue, section 429.010 provided:

> 1. Any person who shall do or perform any work or labor upon land, rent any machinery or equipment, or use any rental machinery or equipment, or furnish any material, fixtures, engine, boiler or machinery for any building, erection or improvements upon land, or for repairing, grading, excavating, or filling of the same, or furnish and plant trees, shrubs, bushes or other plants or provides any type of landscaping goods or services or who installs outdoor irrigation systems under or by virtue of any contract with the owner or proprietor thereof, or his or her agent, trustee, contractor or subcontractor, or without a contract if ordered by a city, town, village or county having a charter form of government to abate the conditions that caused a structure on that property to be deemed a dangerous building under local ordinances pursuant to section 67.410, RSMo, upon complying with the provisions of sections 429.010 to 429.340, shall have for his or her work or labor done,

Finding no merit in these points, we affirm the judgment of the trial court.

---

machinery or equipment rented or materials, fixtures, engine, boiler, machinery, trees, shrubs, bushes or other plants furnished, or any type of landscaping goods or services provided, a lien upon such building, erection or improvements, and upon the land belonging to such owner or proprietor on which the same are situated, to the extent of three acres; or if such building, erection or improvements be upon any lot of land in any town, city or village, or if such building, erection or improvements be for manufacturing, industrial or commercial purposes and not within any city, town or village, then such lien shall be upon such building, erection or improvements, and the lot, tract or parcel of land upon which the same are situated, and not limited to the extent of three acres, to secure the payment of such work or labor done, machinery or equipment rented, or materials, fixtures, engine, boiler, machinery, trees, shrubs, bushes or other plants or any type of landscaping goods or services furnished, or outdoor irrigation systems installed; except that if such building, erection or improvements be not within the limits of any city, town or village, then such lien shall be also upon the land to the extent necessary to provide a roadway for ingress to and egress from the lot, tract or parcel of land upon which such building, erection or improvements are situated, not to exceed forty feet in width, to the nearest public road or highway. Such lien shall be enforceable only against the property of the original purchaser of such plants unless the lien is filed against the property prior to the conveyance of such property to a third person. For claims involving the rental of machinery or equipment to others who use the rental machinery or equipment, the lien shall be for the reasonable rental value of the machinery or equipment during the period of actual use and any periods of nonuse taken into account in the rental contract, while the machinery or equipment is on the property in question.

2. There shall be no lien involving the rental of machinery or equipment unless:
  (1) The improvements are made on commercial property;
  (2) The amount of the claim exceeds five thousand dollars; and
  (3) The party claiming the lien provides written notice within five business days of the commencement of the use of the rental property machinery or equipment to the property owner that rental machinery or equipment is being used upon their property. Such notice shall identify the name of the entity that rented the machinery or equipment, the machinery or equipment being rented, and the rental rate. Nothing contained in subsection 2 of this section shall apply to persons who use rented machinery or equipment in performing the work or labor described in subsection 1 of this section.

Section 429.080 provides:

It shall be the duty of every original contractor, every journeyman and day laborer, including persons who use rented machinery or equipment in performing such work or labor, and every other person seeking to obtain the benefit of the provisions of sections 429.010 to 429.340, within six months after the indebtedness shall have accrued, or, with respect to rental equipment or machinery rented to others, then, within sixty days after the date the last of the rental equipment or machinery was last removed from the property, to file with the clerk of the circuit court of the proper county a just and true account of the demand due him or them after all just credits have been given, which is to be a lien upon such building or other improvements, and a true description of the property, or so near as to identify the same, upon which the lien is intended to apply, with the name of the owner or contractor, or both, if known to the person filing the lien, which shall, in all cases, be verified by the oath of himself or some credible person for him.

Unless otherwise indicated, all statutory references are to RSMo Cum. Supp. 2012. All rule references are to Missouri Court Rules (2016).

**Standard of Review and Governing Law**

We presume the judgment to be correct, and it is the appellant's burden to demonstrate reversible error. *Scheck Indus. Corp. v. Tarlton Corp.*, 435 S.W.3d 705, 717 (Mo. App. E.D. 2014). "Upon review of a court-tried mechanic's lien action, the trial court's judgment will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *Winters Excavating, Inc. v. Wildwood Dev., L.L.C.*, 341 S.W.3d 785, 789 (Mo. App. S.D. 2011). "[W]e view the evidence and all reasonable inferences drawn therefrom in the light most favorable to the judgment and disregard all evidence and inferences to the contrary." *Id.* (quotation omitted). The trial court decides the credibility of witness, and "we generally defer to the trial court's findings of fact[.]" *Mo. Land Dev. Specialties, LLC v. Concord Excavating Co.,* 269 S.W.3d 489, 496 (Mo. App. E.D. 2008). "All fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached." Rule 73.01(c); *see also* *Piazza v. Combs*, 226 S.W.3d 211, 220 (Mo. App. W.D. 2007).

"[T]he mechanic's lien law should be construed as favorably to mechanics and materialmen as its terms will permit[.]" *Mid-W. Eng'g & Constr. Co. v. Campagna*, 421 S.W.2d 229, 233 (Mo. 1967). However, because a "mechanic's lien is purely a creature of the statutes[,] the policy of liberal construction of the lien statutes does not relieve a claimant of the necessity of reasonable and substantial compliance with statutory requirements." *Patrick V. Koepke Constr., Inc. v. Woodsage Constr. Co.*, 844 S.W.2d 508, 512 (Mo. App. E.D. 1992).

**Evidentiary and Procedural Background**

A director of Contractor, Joseph Kehrer, testified that sometime in 2007, Owner "asked if we wanted to get involved with building this project at the lake [('the project')] because he knew our capabilities and he asked if we'd be willing to help him with the project and I accepted." Owner and Contractor executed the contract in October 2007, and Contractor began excavation work the following month. During Mr. Kehrer's testimony, Bank's attorney[3] informed the trial court that there was no dispute that the contract was a construction contract.

Near the top of the contract, Contractor was denominated "Contractor[,]" but Owner was identified as "Subcontractor[.]" The contract identified Owner by name in the space provided for the "Project Name[.]" Owner's signature was below the caption "OWNER[,]"and Owner's name was typed in capital letters. A signature for Contractor followed its identification as "Contractor" and by Contractor's typed name. The contract specified that it was a "TIME AND MATERIAL CONTRACT[.]" The contract included an addendum signed by Owner as "Owner" and Contractor as "Contractor/Sub-contractor" that, in addition to a notice regarding lien waivers, provided:

> CONSENT OF THE OWNER IS HEREBY GIVEN FOR FILING OF MECHANIC'S LIENS BY ANY PERSON WHO SUPPLIES MATERIALS OR SERVICES FOR THE WORK DESCRIBED IN THIS CONTRACT ON THE PROPERTY ON WHICH IT IS LOCATED IF HE IS NOT PAID.

Mr. Kehrer explained that Contractor's form contract was entitled "Subcontract Agreement" because when Contractor started out in business, it did more subcontracting work than "regular general contracting work."

---

[3] In addition to representing himself, Mr. McCutcheon also served as Bank's counsel. Mr. McCutcheon admitted in his answer to the first amended petition that he was "designated as a Second Party/Trustee" in the deed of trust securing Bank's promissory note executed by Owner.

Mr. Kehrer testified that a time frame for the project was not initially discussed. He additionally testified that the property would not "be considered residential, but yeah, [Owner] was building a place on his land." He explained that the project involved the construction of a garage with a basement and access from the lake for Owner's boat. The excavation portion of the project was completed in January 2008. From that point until March 2009, "other trades" worked on the site so that Contractor "could set the precast [panels]."

On cross-examination, Mr. Kehrer testified that Contractor was the general contractor for the work on the project and Contractor was "supposed to do . . . . [p]retty much whatever [Owner] wanted [Contractor] to do" on the property. In April 2009, Bank "became the holder of a promissory note in the original principal amount of $1,650,000, and a deed of trust secured by the property, both executed by [Owner]." *Kehrer I*, 453 S.W.3d at 821.

Between May and December 2009, following Contractor's installation of the precast panels, some of Contractor's equipment remained on the property at Owner's request. Copies of Contractor's "Time Sheet[s]" and "Equipment Rental Agreement[s]" signed by Owner as "Renter" were identified by Mr. Kehrer and admitted into evidence. Mr. Kehrer confirmed that the lien statement included multiple charges for what was labeled as "equipment rental[,]" but he then explained (without objection),

> Well, I've got them listed as equipment rental, but actually this equipment setting [sic] there's a loss opportunity on other projects where I actually could have had them making me money on another project. But by the request of [Owner], and I don't know what he was thinking . . . but, you know, on a T& M contract you pretty much – the owner is the boss. If he tells you I want the equipment let [sic] here, it's going to be a couple weeks, a month, you pretty much do what the owner wants you to do.

6

Mr. Kehrer "told [Owner] that it was going to cost him the same for the piece of equipment if it was sitting or if it was working."

In July 2010, Contractor "installed a peel and stick type material on the roof deck after the plywood had been installed." In August 2010, Contractor performed "demo work inside the existing house." Mr. Kehrer understood that this work was necessitated by a water pipe that had burst the previous winter, but the repair had been delayed while Owner "fought with the insurance company[.]" The last date on which Contractor performed work on the property was August 15, 2010.

Owner testified that he had asked Contractor to assist with improvements on the property, and the contract was his written agreement with Contractor. Owner agreed that Contractor's charges were "fair and reasonable[.]" Owner explained: "It was just a big job. [Mr. Kehrer] had a lot of equipment, as far as that goes. The equipment rental is what we agreed on and then the hourly price we agreed on on the per hour deal."

In November 2010, Mr. McCutcheon, as trustee, "foreclosed on [Owner's] promissory note and deed of trust on behalf of [Bank] . . . . [and a] trustee's deed on the property was recorded on behalf of [Bank]." *Id.* at 821-22. On February 14, 2011, Contractor filed the lien statement with the circuit clerk, claiming $480,637.50 plus interest and attorney fees. Bank asserted defenses to the lien that included, *inter alia:* Contractor failed to state a claim for relief; the lien statement was untimely under section 429.080 because the work "did not constitute one continuous running account"; and Contractor was barred from receiving a mechanic's lien for equipment rental. Bank did not present any witnesses or exhibits at trial.

After our remand in ***Kehrer I***, Contractor, Bank, and Mr. McCutcheon stipulated that Contractor "performed its work and labor and furnished its materials and services described in [the s]tatement . . . at the [p]roperty." They also stipulated that Owner owned the property when Contractor provided the "work and labor and . . . materials and services" described in the lien statement.

Bank filed three trial briefs that argued, *inter alia:* the contract provided that Owner, instead of Contractor, was to provide the work and therefore Contractor "is not entitle[d] to a mechanic's lien"; the work was not performed under a continuous contract so that "the only charges that are not barred by the six month statute of limitations in [section] 429.080" were from July and August 2010 and totaled $18,120; and because the work was performed on residential property, Contractor was not entitled to equipment rental charges. The trial court heard argument from the parties in March 2015 and took the matter under advisement.

In April 2015, the trial court entered a docket entry finding "the issues in favor of [Contractor]" except for the following three items that together totaled $28,320: setting the slab as invoiced in April 2009, installing "polystik" to the roof as invoiced in July 2010, and demolition of the "existing house" as invoiced in August 15, 2010. The trial court found that these three items had been "billed as a lump sum without further explanation" and "the contract . . . was clearly for time and materials." The trial court

> consider[ed] the equipment charges for the various items of equipment charged during the project while not in use to be charges for non-availability of the equipment to [Contractor]. These charges for non-availability or downtime were clearly agreed to and contemplated by [Contractor] and [Owner] for the duration of the project. Further [Contractor] returned to work at the site after the various downtime charges were incurred and often remained on site working while some of the equipment was not being used but was being charged for.

8

The judgment followed the docket entry, and it contained additional findings consistent with those set forth in the docket entry. The judgment awarded Contractor $452,317.50 for the work covered by the mechanic's lien, $892.00 for costs, and $287,836.39 for prejudgment interest. Bank's appeal timely followed.

**Analysis**

*Point 1—The Contract*

Bank contends the trial court erred in enforcing the mechanic's lien because the contract did not require Contractor "to perform any work[,]" and section 429.010.1 requires that work be performed "under or by virtue of any contract with the owner[.]" This defective point does not explain "why, in the context of the case, [the] legal reasons support the claim of reversible error." *See* Rule 84.04(d)(1)(C). The context here is that Bank and Mr. McCutcheon agreed that the contract was a construction contract, and Contractor "*performed its work* and labor and furnished its materials and services described in [the lien statement] and mentioned in the evidence at the [p]roperty." (Emphasis added.)

Bank's argument in support of Point 1 further muddies its claim by arguing *both* that the "[j]udgment is not supported by substantial evidence and misapplied the law by enforcing the mechanic's lien sought by [Contractor]." Such claims are distinct, *see **Ivie v. Smith***, 439 S.W.3d 189, 199 n.11 (Mo. banc 2014) ("a substantial-evidence challenge, a misapplication-of-law challenge, and an against-the-weight-of-the-evidence challenge . . . . are distinct claims"), and "[t]hey must appear in separate points relied on in the appellant's brief to be preserved for appellate review." ***Id.***

We may review a deficient point *ex gratia* if the supporting arguments are understandable, ***Nickel v. Stephens Coll.***, 480 S.W.3d 390, 396 (Mo. App. W.D. 2015), but

9

Bank would not prevail even if we chose to do so here. In terms of applying section 429.010.1, no particular contract terms are required; the necessary proof is that the contractor performed the acts described "upon land . . . *under or by virtue of any contract with the owner*" (emphasis added). And while the trial court did not expressly find that Contractor performed its work "by virtue of any contract with the owner" (*see* section 429.010.1), we may consider such a fact "as having been found in accordance with the result reached." Rule 73.01(c); *see also **Piazza***, 226 S.W.3d at 220. Point 1 is denied.

*Point 2─Timeliness of the Lien Statement*

Bank's second point claims Contractor did not file the lien statement "within the time required by [section] 429.080" because it was filed on February 14, 2011, and "the last item allowed by the trial court as part of the mechanic's lien involved rental charges for the month of December 2009[.]" Bank contends that "the trial court misapplied the law in enforcing the mechanic's lien" based on the dates of particular items allowed in the lien, but Bank provides no controlling legal authority for its position in the context of the trial court's findings.

Section 429.080 requires "a just and true account of the demand due" to be filed with the circuit court clerk "within six months after the indebtedness shall have accrued[.]" "Whether or not a lien statement is a just and true account depends upon the particular facts of each case." ***S & R Builders & Suppliers, Inc. v. Marler***, 610 S.W.2d 690, 697 (Mo. App. E.D. 1980). "If a lien claimant submits items of account intentionally and knowingly which are unwarranted, the entire lien right is vitiated. However, where a lien contains some nonlienable items for relatively small amounts this does not make the entire lien defective." ***Id.*** (citation omitted). *See also **Concord Excavating Co.***, 269 S.W.3d at 499 ("it has long

10

been recognized that including nonlienable items in a lien statement does not necessarily

vitiate the entire lien" such as where there is no intent by the claimant to defraud).

"When a job is finished and indebtedness has accrued is a question of fact."

*Midwest Floor Co. v. Miceli Dev. Co.*, 304 S.W.3d 243, 247 (Mo. App. E.D. 2009).

Whether single or multiple contracts were involved is also a question of fact. *Id.* at 248.

> The general rule is, that where two distinct contracts are *in fact made* as for
> different parts of the same work, the work done under each contract must be
> entire of itself. But where work done or materials furnished all go to the
> same general purpose, as the building of a house or block of houses and
> buildings appurtenant thereto, though such work done or materials furnished
> were not contracted for on the same day or at the same time, yet, if they were
> done and furnished as parts of a general improvement of the property, all of
> such work and materials may be regarded within the meaning of the
> mechanic's lien statute as done and furnished under one contract and may be
> included in one lien account.

*Flanagan Bros. v. O'Connell*, 88 Mo. App. 1, 8-9 (Mo. App. K.C.D. 1901).

While Bank couches its argument as involving a misapplication of law, Bank simply

argues its view of some of the evidence as demonstrating that the non-excavation work was

"distinct[,]" and the work done in the summer of 2010 that was disallowed by the trial court

"did not extend the time for filing" the lien statement. The trial court found that Contractor

was entitled to a mechanic's lien on all work performed by Contractor except three items

dated in April 2009, July 2010, and August 2010 (totaling $18,320 – 4% of the lien

statement claim before interest and attorney fees) because that work was not based on time

and material charges. There is no finding that the disallowed amount was attributable to an

intentional and knowing attempt by Contractor to establish an unwarranted lien.

There is also no finding by the trial court that the work in December 2009 was

performed under a separate contract. Rather, substantial evidence supported the trial court's

conclusion that there was only one contract, and the contract covered work through August

11

15, 2010.[4]  Bank fails to identify a legal principle that would require us to reverse a judgment based on findings that the services performed and the materials provided were as "set forth in [Contractor's] lien statement at the instance of [Owner], and those services and materials were incorporated into the construction of the house and related improvements located on the [p]roperty."  Point 2 is denied.

*Point 3—The Equipment Charges*

Bank's final point reads:

> The trial court erred in enforcing the mechanic's lien with respect to the equipment rental charges, [sic] because the equipment rental charges are not lienable pursuant to [section] 429.010.2, in that the Equipment Rental Agreement and Invoices indicate that the charges were for equipment rental and the improvement made by [Contractor was] not on commercial property.

As with Point 2, Bank's third point does not characterize the nature of the error asserted.  The argument supporting the point contends *both* that the trial court's ruling "is not supported by substantial evidence and misapplied the law."[5]  Once again, these distinct error-claims must be asserted in separate points in order to preserve them for our review and give them any analytical value.  *Ivie*, 439 S.W.3d at 199 n.11.  While we prefer to decide a case on its merits, and we may review a readily-understandable but legally deficient point *ex gratia*, *see **Nickel***, 480 S.W.3d at 396, our attempt to do so here is fatally impeded by Bank's failure to satisfy the very first step required in a substantial-evidence challenge:

---

[4] Such evidence includes testimony, stipulations, and reasonable inferences therefrom demonstrating that there was a single construction contract that first involved excavation beginning in November 2007, but the project also involved "[p]retty much whatever [Owner] wanted [Contractor] to do" on the property, including demolition work in August 2010. *See **Kehrer I***, 453 S.W.3d at 821.  The charges were "fair and reasonable" in Owner's view and reflected that it was a "big project[.]"  Moreover, the trial court did not find that the three disallowed items were excepted because the charges were false, rather it took issue with the three items being treated "as a lump sum without further explanation" when the contract called for payment based upon time and materials.

[5] Bank also argues that parol evidence cannot be used to support the trial court's judgment regarding the equipment charges.  We do not reach the parol evidence issue for the other reasons discussed, *infra*, but to the extent that Bank is contending that the trial court erred by relying on parol evidence, that claim is not preserved for review as it is not included in Point 3.  *See **Bellemere v. Cable-Dahmer Chevrolet, Inc.***, 423 S.W.3d 267, 273 (Mo. App. W.D. 2013), and Rule 84.04(e).

12

"identify a challenged factual proposition, the existence of which *is necessary* to sustain the judgment[.]" **Houston**, 317 S.W.3d at 187 (emphasis added). This failure necessarily deprives us of any ability to determine whether the trial court misapplied section 429.080.2 to the challenged factual proposition.

Bank contends that the equipment charges must be characterized as equipment rental, and charges for equipment rental are lienable only if incurred in making improvements on commercial property. Thus, Bank argues that "Missouri law does not allow a mechanic's lien for machinery or equipment rental on residential property" and quotes section 429.010.2(1). But Bank also acknowledges that the "[j]udgment does not specifically mention the charges for equipment rental[,]" and the trial court found that the equipment charges were "for non-availability or downtime[.]" In arguing that "non-availability or downtime" is "considered rental of machinery or equipment[,]" Bank relies on the following sentence in a previous version of section 429.010.

> For claims involving the rental of machinery or equipment, the lien shall be for the reasonable rental value of the machinery or equipment during the period of actual use and any periods of nonuse taken into account in the rental contract, while the equipment is on the property in question.

Section 429.010 RSMo Cum. Supp. 2006.

Section 429.010 was amended in 2007, effective August 28, 2007, and that version remained in effect until the statute was amended again in 2012. S.B. No. 302 § A, 94th Gen. Assem., 1st Reg. Sess. (2007), RSMo Cum. Supp. 2012; S.B. No. 357, § A, 97th Gen. Assem., 1st Reg. Sess. (2013), RSMo Supp. 2014; see also Mo. Const. art. III, sec. 29. The 2007 version of the statute is the version applicable to this case as the contract was executed in October 2007, performance started the next month, and Contractor filed its lien in

13

February 2011.  And the sentence Bank relies on as support for its error-claim is materially different in the 2007 version:

> For claims involving the rental of machinery or equipment *to others who use the rental machinery or equipment*, the lien shall be for the reasonable rental value of the machinery or equipment during the period of actual use and any periods of nonuse taken into account in the rental contract, while the machinery or equipment is on the property in question.

Section 429.010.1 (emphasis added).

As we understand Bank's brief, it does not argue that the trial court either found or had to find that Contractor rented the equipment at issue from some third party or that Contractor rented the equipment to Owner who then used the rented equipment himself. Apart from the wrong version of section 429.010, Bank cites no authority that would disallow a lien for the equipment charges, and this court is appropriately forbidden from attempting to locate any such authority on Bank's behalf.  *See* **Houston**, 317 S.W.3d at 187, and *cf.* **City of Peculiar v. Hunt Martin Materials, LLC**, 274 S.W.3d 588, 591 (Mo. App. W.D. 2009) (a reversal necessarily depends upon a showing that all of the reasons stated by the trial court for the judgment are wrong).

Point 3 is also denied, and the judgment of the trial court, presumed correct, is affirmed.

DON E. BURRELL, P.J. – OPINION AUTHOR

NANCY STEFFEN RAHMEYER, J.  – CONCURS

GARY W. LYNCH, J. – CONCURS